Submitted on record and briefs June 19, affirmed October 9, 1996

Jerry EVERMAN,
*Appellant,*

*v.*

Lloyd LOCKWOOD
and Kay Workman,
*Respondents.*

(95C-7047; CA A91475)

925 P2d 128

Stephen D. Petersen and Petersen & Reed filed the brief for appellant.

Shawn M. Sornson filed the brief for respondent Lockwood.

Gordon R. Hanna and Donaldson, Albert, Tweet, Connolly, Hanna & Muniz filed the brief for respondent Workman.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff brought this action alleging that defendants had converted a portable sawmill. As an affirmative defense, defendants alleged, *inter alia*, that plaintiff's claim was barred by the statute of limitations. After a trial to the court, the court agreed that plaintiff's claim was barred because his claim accrued in 1986, more than six years before he filed this action. ORS 12.080(4). Plaintiff appeals. We review *de novo* to determine if there is evidence to support the trial court's judgment, *Lieuallen v. Heidenrich*, 259 Or 333, 334, 485 P2d 1230 (1971), and affirm.

The evidence showed that plaintiff, a resident of Alaska, and Dennis Doan owned a portable sawmill that, at some time before 1986, came into possession of McCaig and Stevenson. The latter two took the sawmill to defendant Kay Workman's property where they used the sawmill to cut lumber. Young also worked on the Workman property, but he did not use the sawmill. In the summer of 1986, Polk County ordered that McCaig and Stevenson stop cutting lumber on the property, and they did so. They left the sawmill on the property with Workman's permission. She stated that storage fees would be charged. The sawmill was inside a cyclone fence next to a shed, and the gate in the fence was padlocked.

Workman testified that, when Young and others appeared to collect the sawmill and other equipment, she told them that she wanted a storage charge of $100 per month. She collected $400 from Young's brother, which paid for storage through December 19, 1986, and Young's brother signed a receipt showing that $400 had been paid for four months' storage. However, Young did not take the sawmill, and Workman made a note that Young "did not pick up portable sawmill so now owes rent of $100 a month from 12-19-86 on."

Doan testified that he went to Workman's property 20 times between 1987 and 1989 attempting to get the property and that he left four messages instructing Workman to call him about the sawmill. Both Workman and her husband testified that they never received any messages or saw anyone come onto the property. Workman's husband testified

that he would have required payment of $100 a month for storage before the sawmill was released.

The sawmill remained inside the fence, unused, until Workman decided in 1990 to sell the real property. She sold the sawmill to defendant Lockwood for $1,500 on June 4, 1990. About six months later, Doan contacted Workman's husband, who told Doan that the sawmill had been sold to someone other than Lockwood. When Doan finally discovered that Lockwood had the sawmill, plaintiff's attorney sent a letter demanding its return. When the sawmill was not returned, plaintiff filed this action.

In a letter opinion, the trial court held that the

"cause of action accrued in May 1986, when Mr. Young vacated Kay Workman's property leaving the portable sawmill. This action commenced on November 16, 1993[.] ORS 12.080(4) sets the Statute of Limitations at six (6) years. More than six (6) years has elapsed and this action is barred."

The judgment recited that the action was barred by the statute of limitations.

Plaintiff agrees that ORS 12.080(4) applies and that an action must be filed within six years of the time that conversion occurs. He argues, however, that the court erred in holding that conversion occurred in 1986, instead of June 1990, when Workman sold the sawmill.

In *Mustola v. Toddy*, 253 Or 658, 456 P2d 1004 (1969), the court adopted *Restatement (Second) of Torts* 431, § 222A (1965), which, in section (1) defines conversion as

"an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."

Section (2) sets out "important" factors to assist in determining "the seriousness of the interference":

"(a)   the extent and duration of the actor's exercise of dominion or control;

"(b)   the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c)    the actor's good faith;

"(d)    the extent and duration of the resulting interference with the other's right of control;

"(e)    the harm done to the chattel;

"(f)    the inconvenience and expense caused to the other." 253 Or at 663-64 (quoting *Restatement (Second) of Torts* 431, § 222A).

Plaintiff argues that, between 1986 and 1990, "[t]he only obstacle to recovering possession of the sawmill was Doan's inability to contact anyone on the property." He contends that, although that was "annoying," it does not amount to an interference by Workman serious enough so that she would have had to pay full value for the chattel. Plaintiff argues that Workman was only "storing" the sawmill, not exercising control over it.

Workman argues that her possessory lien was "illegal" because, under ORS 87.176, a landowner may charge reasonable storage for only 20 days unless written notices are sent by certified mail. Here, there was no evidence that those notices were given. Workman contends, thus, that her imposition of an illegal lien constituted conversion. As support for that position, she cites *United Engine Parts v. Ried*, 283 Or 421, 431-32, 584 P2d 275 (1978). However, in that case, the imposition of an invalid lien did not, in itself, constitute conversion. Rather, conversion occurred when the lienor, who did not qualify for a statutory lien, failed to surrender possession of a truck on demand.

In his brief, Lockwood contends that conversion occurred when the sawmill was locked inside the fence in 1986. He argues that the circumstances here are similar to those in *Legg v. Allen*, 72 Or App 351, 696 P2d 9 (1985). There, we found that the sellers of a store converted the buyer's personal property when the sellers changed the locks on the store, did not notify the buyers of their action and caused the police to keep the buyers from entering the store. Lockwood contends that, here, when Workman locked up the sawmill, she exercised exclusive dominion and control and, after that point, plaintiff had no control over the sawmill. Therefore, Lockwood contends, conversion occurred at that time.

We agree that the evidence supports the trial court's conclusion that conversion occurred in 1986. Workman's refusal to release the sawmill unless storage was paid was a serious interference with plaintiff's right to the sawmill. Storage charges would continue, and the sawmill would not be released until the charges were paid. Workman made no attempt to contact anyone regarding the sawmill, even though she had the vehicle license number of the persons who had come for the equipment. She kept the fence locked and did not make the sawmill accessible to the owner. Workman's interference continued for such time and to such an extent that the trial court could conclude that Workman was not merely "storing" the sawmill, but was controlling it in a manner that seriously interfered with the owner's right to the sawmill. The trial court did not err in holding that plaintiff's claim is barred.

Affirmed.