Submitted on remand from the Oregon Supreme Court January 28, reversed and remanded in part for new trial; otherwise affirmed March 13, respondents Southern Pacific Transportation Company's and Union Pacific Railroad Company's petition for reconsideration filed March 26 and appellant Abrams, Inc.'s, and third-party appellant Stuart Abrams's response to petition for reconsideration filed April 2, allowed by opinion May 8, 2003
See 187 Or App 472 (2003)

BEALL TRANSPORT EQUIPMENT CO.,
an Oregon corporation,
*Respondent,*

*v.*

SOUTHERN PACIFIC TRANSPORTATION,
a Delaware corporation;
Union Pacific Railroad Company,
a Utah corporation;
City of Portland;
State of Oregon,
acting by and through the
Department of Motor Vehicles;
John Hren; John R. Greisen; Thomas Morrison;
W. Raymond Horn; Stuart Abrams; Wayne C. Klepper
and Stuart Abrams,
dba Abrams Metals, Inc.,
*Defendants,*

*and*

ABRAMS, INC.,
dba Abrams Scrap Metals, Inc.,
*Appellant.*

SOUTHERN PACIFIC TRANSPORTATION
COMPANY,
a Delaware corporation,
and Union Pacific Railroad Company,
a Utah corporation,
*Third-Party Respondents,*

*v.*

Wayne C. KLEPPER,
*Third-Party Defendant,*

*and*

Stuart ABRAMS,
*Third-Party Appellant.*

ABRAMS, INC.,
*Appellant,*

*v.*

SOUTHERN PACIFIC TRANSPORTATION
COMPANY,
a Delaware corporation,
and Union Pacific Railroad Company,
a Utah corporation,
*Respondents,*

*and*

Wayne KLEPPER
and Pat Ryan,
*Defendants.*

9701-00347, 9701-00757; A102619

64 P3d 1193

Thomas M. Christ and Michael H. Bloom for appellant Abrams, Inc., and third-party appellant Stuart Abrams.

Patrick L. Block, Steven G. Marks, and Buono Block PC for respondent Beall Transport Equipment Co.

Christopher T. Carson, Gregory B. Snook, Jeffrey A. Kilmer, and Kilmer, Voorhees & Laurick, P.C., for respondents Southern Pacific Transportation Company and Union Pacific Railroad Company.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

This case is before us following remand from the Oregon Supreme Court. *Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 60 P3d 530 (2002). The only remaining issue for our determination is whether the trial court erred in refusing to give an instruction, requested by appellants Stuart Abrams and Abrams, Inc. (collectively "Abrams"),[1] describing factors pertaining to the jury's determination of liability for conversion. In our initial opinion, we concluded that Abrams had not preserved that assignment of error. *Beall Transport Equipment Co. v. Southern Pacific*, 170 Or App 336, 13 P3d 130 (2000). On review, the Supreme Court rejected our nonpreservation analysis and directed us to address the merits of that assignment. *Beall Transport Equipment Co.*, 335 Or at 141. We now conclude that the trial court erred in failing to give Abrams's requested instruction and that, in the totality of the circumstances, that error was not harmless. Accordingly, we reverse the trial court's judgment in Southern Pacific's favor against Abrams and remand for a new trial.

To place the remaining assignment of error in context, we briefly recapitulate the dispute:

"Wayne Klepper was the manager of Southern Pacific's Brooklyn Yard in southeast Portland. On any given day, the yard was filled with several hundred semi-trailers, which Southern Pacific used to transport goods by both highway and rail. The trailers were hauled to the Brooklyn Yard by trucks, stacked on flatbed or specially designed rail cars and transported to other rail yards, where they were again attached to trucks and hauled to their final destination. * * *

"* * * * *

---

[1] As described in our original opinion and summarized below, Abrams and respondent Southern Pacific Transportation Company participated in the trial court proceedings in a multiplicity of roles: plaintiff, defendant, cross-claim plaintiff, cross-claim defendant, counterclaim plaintiff, and counterclaim defendant. Consequently, for ease of reference, we simply refer to the parties by name. Respondent Union Pacific Railroad Company acquired Southern Pacific during the pendency of this litigation.

"In May 1995, Klepper, falsely purporting to act on behalf of Southern Pacific as the Brooklyn Yard manager, sold several trailers to Abrams, a Portland scrap metal dealer. Klepper told Abrams that the trailers were excess trailers *owned* by Southern Pacific but, in fact, they were only *leased* by Southern Pacific. By the end of 1996, Klepper had sold Abrams about 130 such trailers from the Brooklyn Yard. Abrams, in turn, sold at least 79 of the stolen trailers to Beall, a used trailer dealer, who then resold 55 of the trailers to third parties. Klepper kept all of the proceeds from each sale for himself. He later pleaded guilty to criminal charges arising from these transactions.

"When Southern Pacific finally learned that the trailers were missing, it immediately reported them stolen. With the aid of the police, Southern Pacific was able to recover many of the trailers from both Abrams and Beall."

*Beall Transport Equipment Co.,* 170 Or App at 339-40 (emphasis in original).

Thereafter, Beall brought an action asserting various claims against Southern Pacific and Abrams. Southern Pacific, in turn, cross-claimed against Abrams for conversion, and Abrams cross-claimed against Southern Pacific for conversion and indemnity. Abrams later instituted a separate action against Southern Pacific alleging, *inter alia*, breach of contract and conversion, and Southern Pacific counterclaimed, again alleging conversion. Both actions were consolidated for trial. *Id.* at 340.

The trial court's disposition of Beall's claims against Abrams and Southern Pacific is described in our initial opinion. *Id.* at 340-41. Although Abrams raised several assignments of error that pertain both to the trial court's judgment for Beall and to the judgment for Southern Pacific, we rejected those assignments. *Id.* at 342-49, 357. The only remaining assignment of error following the Supreme Court's remand relates solely to Abrams's and Southern Pacific's claims between themselves. Consequently, the balance of our discussion concerns only those parties and that assignment of error.[2]

---

[2] Again, the only remaining assignment pertains to the failure to give an instruction on conversion. The only conversion claims at issue at trial were those of

At trial, Abrams submitted the following requested instruction, which was derived virtually verbatim from section 222A of the *Restatement (Second) of Torts* (1965):

"Conversion is an intentional exercise of dominion or control over personal property which so seriously interferes with the right of another to control it that the actor may be justly required to pay the full value of the personal property.

"In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a)  The extent and duration of the actor's exercise of dominion or control;

"(b)  The actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c)  The actor's good faith;

"(d)  The extent and duration of the resulting interference with the other's right of control;

"(e)  The harm done to the chattel;

"(f)  The inconvenience and expense caused to the other."

Conversely, Southern Pacific submitted an instruction limited to only the first paragraph of *Restatement* section 222A. Counsel for Southern Pacific objected to the second

---

Abrams and Southern Pacific, *inter se*. Abrams has never in its briefing to this court advanced a cogent, much less persuasive, reason why the failure to give its requested instruction on conversion could plausibly have affected the jury's verdict with respect to *Beall*. Rather, Abrams's only assertion in that regard is a single, unamplified sentence in its appellant's brief that "Beall's claims should be retried too, because the jurors might have found that the Railroad's negligence, not Abrams's conduct, was the cause of Beall's damages and thus found Abrams not liable to Beall."

That conclusory sentence is an insufficient basis to support a remand and new trial as to Beall. As noted in our initial opinion, the *jury never* rendered a finding that Abrams was liable to Beall. Rather, before trial, the *court* rendered partial summary judgment in Beall's favor on Abrams's liability for breach of contract. *Beall Transport Equipment Co.*, 170 Or App at 340. The only issue that the jury addressed concerning Abrams's liability to Beall pertained to Beall's fraud claim— and the jury returned a verdict for *Abrams* on that claim. *Id.*

Beyond that, it is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.

paragraph of Abrams's requested instruction, arguing that its identification of "the actor's intent to assert a right in fact inconsistent with the other's right of control" and "the actor's good faith" as pertinent factors in determining whether defendant was liable for conversion constituted misstatements of law:

> "An intent that is necessary for conversion has nothing to do with wrongful intent. All it means is that the exercise of control is intended. * * * [A]nd the law is absolutely clear that good faith of the convertor is not a defense to conversion."

Counsel for Southern Pacific made no other recorded exception to Abrams's requested instruction.

Ultimately, the trial court gave Southern Pacific's requested instruction on conversion, which was based on only the first paragraph of *Restatement* section 222A. The court, without any recorded explanation, failed to give Abrams's requested instruction, including the "factors" paragraph.

On appeal, Abrams argues that it was entitled to the requested instruction in that it was legally correct, supported by evidence, and consonant with Abrams's theory of the case. Abrams emphasizes that, in *Mustola v. Toddy*, 253 Or 658, 663-64, 456 P2d 1004 (1969), the court endorsed *Restatement* section 222A in its entirety, including the reference to the "good faith" factor in the second paragraph, and that both the Supreme Court and this court have subsequently, consistently reiterated and applied that formulation. Abrams contends that no instruction that was given conveyed the substance of the second paragraph of its requested instruction and that, in the totality of the circumstances, the failure to give that instruction may well have affected the jury's determination of conversion.

Southern Pacific counters that the court's failure to give the requested instruction was not erroneous or, at least, was not reversible error, for any of three reasons: (1) The second paragraph of the instruction—and, particularly the reference to "the actor's good faith"—is incorrect as a matter of law. (2) Several of the other factors listed in the instruction's second paragraph were potentially misleading or confusing

because some of the factors were inapposite to the circumstances of this case and the evidence as to others overwhelmingly favored Southern Pacific. (3) In all events, any error in failing to give the instruction was harmless when evaluated in context against the totality of the evidence, including evidence showing Abrams's lack of good faith, and the instructions on conversion that the jury did receive.

"A litigant is entitled to instructions on his theory of the case, if the instructions correctly state the law and are based on the pleadings and proof." *Kilgore v. People's Savings & Loan Ass'n.*, 107 Or App 743, 750, 814 P2d 163 (1991), *rev dismissed*, 313 Or 300 (1992) (citing *Denton v. Arnstein*, 197 Or 28, 46, 250 P2d 407 (1952)). Error in failing to give a requested instruction "requires reversal only if the jury instructions given by the trial court, considered as a whole, cause prejudice to the party requesting the instruction." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). The failure to give an instruction is prejudicial "if the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury and if that erroneous impression may have affected the outcome of the case." *Id.* Applying those standards, we address, and reject in turn, each of Southern Pacific's responses.

Abrams's requested instruction was a correct statement of the law. In *Mustola*, the court quoted *Restatement* section 222A and then stated, "We accept this new definition of conversion." 253 Or at 664. The Supreme Court and our court have repeatedly reiterated and applied that formulation, including the listing of pertinent factors in the second paragraph of section 222A.[3] On at least three occasions, our court or the Supreme Court has framed its analysis, at least in part, by reference to the alleged convertor's "good faith," or lack thereof. *See Brunk v. Horton*, 280 Or 239, 242-43, 570 P2d 382 (1977) (rejecting, as speculative, the defendant's argument that the trial court, as finder of fact in action for

---

[3] *See, e.g., Dickens v. DeBolt*, 288 Or 3, 11-13, 602 P2d 246 (1979); *Rizo v. U-Lane-O Credit Union*, 178 Or App 498, 502-03, 37 P3d 220 (2001); *Everman v. Lockwood*, 144 Or App 28, 31-32, 925 P2d 128 (1996); *Legg v. Allen*, 72 Or App 351, 356-57, 696 P2d 9 (1985); *Francis v. Farnham*, 58 Or App 469, 471-72, 648 P2d 1349, *rev den*, 293 Or 635 (1982).

conversion of automobile, failed to consider the defendant's asserted good faith); *Fogh v. McRill*, 153 Or App 159, 167, 956 P2d 236, *rev den*, 327 Or 431 (1998) (noting that evidence supported the trial court's "implicit finding" that the party found liable for conversion "did not act in complete good faith"); *Jordan v. Wilhelm*, 95 Or App 528, 532, 770 P2d 74, *rev den*, 308 Or 79 (1989) (affirming judgment for the defendants upon conversion claim, noting, *inter alia*, that "[f]rom the evidence, the court could have found that defendants asserted the lien in good faith and believed that they were acting within their 'legal rights' ").

Southern Pacific argues, nevertheless, that any reference to a defendant's "good faith" is immaterial to the determination of liability for conversion. As support for that proposition, Southern Pacific relies on the following *dicta* from *Remington v. Landolt*, 273 Or 297, 311-12, 541 P2d 472 (1975), a post-*Mustola* decision:

> "Even under this 'new definition' of conversion 'good faith' is not a complete defense, but only one 'factor' to be considered. Our decision in *Mustola*, however, did not involve discussion of 'good faith' as a 'factor' to be considered. Instead, this court noted that the 'factors' listed in § 222A were 'not intended to be exclusive' and then proceeded to consider an additional 'factor' as 'controlling' in that case.

> "Because *Mustola* did not directly consider the question whether 'good faith' is even a proper 'factor' to be considered by the jury in an action for conversion, it may be that this court should, when that question is presented, consider whether (1) to confirm the test as stated in § 222A and *Mustola*, or (2) to reaffirm the more traditional view to the effect that 'good faith' is not even a 'factor' in an action for conversion, in accordance with the common law rule as stated by Prosser, *The Law of Torts* 83, § 15 (4th ed 1971), and as previously stated by this court in *Madden v. Condon National Bank*, 76 Or 363, 367-68, 149 P 80 (1915), a case apparently not called to the attention of this court at the time of its decision in *Mustola*, or (3) to abolish the tort of conversion, as proposed by the special concurring opinion in this case and for the reasons stated in that opinion.

> "In this case, however, this question is not presented for decision. Plaintiff makes no contention on this appeal that

'good faith' is not a proper 'factor' to be considered by the jury in an action for conversion. This case was also tried and submitted to the jury on the theory that the rule as stated in Restatement § 222A is a correct statement of the law. Under these circumstances, we do not believe that this is a proper case in which to change the substantive law of conversion."

(Footnotes omitted.)

Southern Pacific's reliance on that *dicta* is unavailing for at least three related reasons. First, the court in *Remington* did not purport to repudiate *Mustola*'s adoption of the *Restatement* formulation, including the reference to the "good faith" factor. *See Remington*, 273 Or at 312 ("Under these circumstances, we do not believe that this is a proper case in which to *change* the substantive law of conversion." (Emphasis added.)). Rather, the court merely posited that, in some future case, it might revisit the applicability of the "good faith" factor—and then either "confirm" it or repudiate it in favor of preexisting common law. *Id.*

Second, the Supreme Court has not subsequently repudiated the "good faith" factor when it has had the opportunity to do so. *See, e.g., Dickens*, 288 Or at 11-13; *Brunk*, 280 Or at 242-43. Similarly, as noted, we have subsequently, consistently referred to and applied that factor. *See, e.g., Fogh*, 153 Or App at 167; *Jordan*, 95 Or App at 532.

Third, even if it might somehow be appropriate to revisit and repudiate *Mustola*'s adoption and incorporation of the "good faith" factor, that is a matter exclusively committed to the Supreme Court under the methodology prescribed in *G. L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988). *See Schiffer v. United Grocers, Inc.*, 143 Or App 276, 283-84, 922 P2d 703 (1996), *rev'd on other grounds*, 329 Or 86, 989 P2d 10 (1999) ("We are not in the business of overruling decisions of the Oregon Supreme Court. Correction, if any, lies elsewhere." (Footnote omitted.)). We thus conclude that the requested instruction was a correct statement of the applicable law.

Southern Pacific argues, alternatively, that the requested instruction was potentially confusing or misleading. That was so, Southern Pacific asserts, because some of

the factors listed in the second paragraph were inapposite to a determination of liability and the evidence as to other factors so conclusively favored Southern Pacific that, as to those factors, "Abrams could not possibly have benefitted from the 'factors' instruction."

We note, at the outset, that Southern Pacific did not raise any such objection to the requested instruction in the trial court. Rather, Southern Pacific's sole objection focused on the propriety of the "good faith" factor. Consequently, given the possibility that the requested instruction could have been revised in response to such a contemporaneous objection, it is at least questionable whether Southern Pacific's present argument is cognizable as an alternative basis for affirmance. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (alternative basis for affirmance is not cognizable "if the losing party might have created a *different* record below had the prevailing party raised that issue" (emphasis in original)).

In all events, Southern Pacific's alternative argument fails on its merits. Southern Pacific contends first that factors (e) and (f) of the *Restatement* section 222A formulation—"the harm done to the chattel" and "the inconvenience and expense caused to the other"—were inapposite and, thus, potentially confusing to the jury. In Southern Pacific's view, those factors pertain to damages, not liability—and, in this case, the parties stipulated that, if the jury found liability for conversion the court, not the jury, would determine damages. Southern Pacific misreads the *Restatement* formulation. The first paragraph of section 222A defines conversion as

> "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."

That paragraph, thus, defines the standard of liability. The second paragraph then identifies a nonexclusive list of factors to be considered in determining whether that standard of liability has been met. Thus, under the express terms of *Restatement* section 222A, all of the factors listed in the second paragraph, including factors (e) and (f), pertain to the determination of liability. Consequently, all of those factors

were potentially material to the jury's determination of liability, regardless of the trial court's role in fixing damages.[4]

Nor, as Southern Pacific contends, was the "factors" paragraph potentially confusing or misleading because "several of [the factors] could only have benefitted S. P., not Abrams." Again, Southern Pacific misconstrues the *Restatement* formulation. The second paragraph lists nonexclusive "important" *factors* that the jury may consider in "mix-and-match" fashion. None is designated as dispositive. Consequently, that the evidence as to some of the factors might favor one party does not preclude the jury's consideration of the others.

We turn, finally, to Southern Pacific's harmless error arguments. We first reject Southern Pacific's principal contention that the evidence pertaining to the *Restatement* factors *in toto* so overwhelmingly favored Southern Pacific that Abrams could not have been prejudiced by the failure to instruct the jury on those factors. We particularly reject Southern Pacific's argument that the large disparity between the price Abrams paid Klepper (the Brooklyn Yard Manager) for the semi-trailers and the price at which Abrams sold the semi-trailers to Beall was conclusive of Abrams's lack of good faith. Although that disparity may certainly be probative of a lack of good faith, we cannot say, viewing the totality of the evidence most favorably to defendant,[5] that reasonable jurors could not have found Abrams's conduct to have been merely negligent and in good faith.[6]

We note, moreover, that none of the conversion instructions that were given conveyed the substance of the

---

[4] Of course, factors (e) and (f) could *also* be pertinent to the determination of damages.

[5] *See Hernandez*, 327 Or at 101 n 1 (noting that "[t]he Court of Appeals correctly reviewed the evidence in the light most favorable to the establishment of the facts necessary to require giving the requested instruction"); *Watson v. Miller*, 164 Or App 309, 311, 991 P2d 1083 (1999) ("Because defendants assign error to the trial court's decision not to give their requested instructions, we state the facts in the light most favorable to them.").

[6] Indeed, as Abrams emphasizes, the jury determined that Abrams was not liable to Beall on Beall's fraud claim. *See Beall Transport Equipment Co.*, 170 Or App at 341.

"factors" paragraph of the requested instruction. For example, although one of Southern Pacific's instructions correctly advised the jury that "[g]ood faith is not a *defense* to conversion" (emphasis added), the jury was never informed that a defendant's good faith was a *factor* it could consider in determining liability. *See Remington*, 273 Or at 311 (" '[G]ood faith' is not a complete defense, but only one 'factor' to be considered."). Instructing the jury as to the former, but not the latter, could well have created a prejudicial misimpression. *See Hernandez*, 327 Or at 106-07 (failure to give correct requested instruction is reversible error "if the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury and if that erroneous impression may have affected the outcome of the case").

Finally, Southern Pacific argues that the failure to give the requested instruction was harmless because Abrams failed to object to an instruction that was given, which stated that, if the jury found that Klepper lacked apparent authority to sell the semi-trailers to Abrams, Abrams would be liable to Southern Pacific for conversion. Thus, Southern Pacific reasons, once the jury found that Klepper lacked apparent authority (as it did), it would have held Abrams liable for conversion regardless of any consideration of the *Restatement* section 222A factors. Abrams responds that that argument begs the question:

> "This is circuitous logic. The judge gave the no-authority instruction because he *didn't* give Abrams's conversion instruction. In other words, he told the jurors that Abrams, Inc., was liable for conversion damages if Klepper lacked apparent authority because he *didn't* tell them that, apparent authority aside, they could still find Abrams, Inc., not liable for conversion based on the Section 222A factors. Once the judge rejected Abrams's instruction and those factors, there was no reason not to give the no-authority instruction, and no reason for Abrams to object to giving it."

(Emphasis in original.)

We agree with Abrams. As we understand the Supreme Court's preservation analysis that underlay this remand, Abrams was not obligated to object to, or assign

error to, any given instruction in order to preserve its challenge to the failure to give its requested instruction. *See Beall Transport Equipment Co.*, 335 Or at 138; *Hernandez*, 327 Or at 105 ("[I]f a party requests a jury instruction that correctly states the law on the subject in issue, that party need not register a separate objection to the court's other instructions in order to preserve for appellate review the question whether the court erred in declining to review the requested instruction."). By the same token, the fact that the trial court gave an unobjected-to instruction that might have contradicted or obviated application of the legally correct requested instruction does not, and cannot, render the failure to give the requested instruction harmless. To hold otherwise would require an appellant to assign error to the given instruction in order to preserve any colorable challenge to the failure to give the requested instruction. That is precisely the result that the Supreme Court has rejected. *Beall Transport Equipment Co.*, 335 Or at 138; *Hernandez*, 327 Or at 105.

The trial court erred in failing to give Abrams's requested instruction. That error was not harmless.

Judgment in favor of Southern Pacific Transportation Company against Abrams, Inc., and Stuart Abrams reversed and remanded for new trial; otherwise affirmed.