Submitted June 16, 2011, reversed and remanded for reconsideration June 6, 2012

US MARKET #109;
US Market #109, LLC; and Lal Sidhu,
*Petitioners,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

Oregon Liquor Control Commission
OLCC08V112; A144388

279 P3d 833

Terence S. McLaughlin filed the briefs for petitioners.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

In this companion case to *US Market #180, LLC v. OLCC*, 249 Or App 666, 278 P3d 116 (2012), licensee seeks review of a final order of the Oregon Liquor Control Commission (OLCC) that cancelled its license to sell alcoholic beverages at US Market #109.[1] Licensee contends in its sole assignment of error that the OLCC erred in concluding that licensee failed to comply with a restriction on its license, and thereby violated OAR 845-005-0355(5), when one of licensee's employees sold beer to an underage patron without using age-verification equipment.[2] Although we conclude that the OLCC did not err in determining that licensee had violated OAR 845-005-0355(5), we nonetheless reverse and remand the final order for reconsideration of the sanctions imposed on licensee in light of our decision in *US Market #180*.

We take the pertinent facts, which are undisputed, from the OLCC's final order and the record supporting the order. Licensee owns a number of small stores in addition to US Market #109, a convenience store in Woodburn, that are licensed to sell alcoholic beverages. As a result of violations of

---

[1] Consistently with the designation of the parties in the contested case proceeding, we refer to US Market #109; US Market #109, LLC; and the managing member of US Market #109, LLC, individually and collectively, as "licensee" throughout this opinion.

[2] Licensee also argues that the OLCC erred in "cancelling the off-premises license of US Market #109 based upon [licensee's] removal from the Responsible Vendor Program." Under a generous reading of the analysis by which it purports to reach that conclusion, licensee appears to be relying on OAR 845-009-0135(6), which provides:

"Sanctions. If the licensee's employee sells to a minor and the licensee is a certified Responsible Vendor who has all program standards in place, the [OLCC] will not cancel the license of the licensee, or deny issuance of a license to the person who holds the retail license. The licensee will be eligible for reduced sanctions based on OAR 845-006-0500[.]"

Without developing licensee's contention further than it has endeavored to do for itself, *see Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be [or] to make or develop a party's argument when that party has not endeavored to do so itself."), we reject the argument because the OLCC cancelled licensee's license as a consequence of a violation of OAR 845-005-0355(5), not of OAR 845-006-0335(1). In other words, licensee's undeveloped argument is unavailing because the license cancellation was a sanction for licensee's failure to comply with a license restriction—not for licensee's employee having sold alcohol to a minor—and, therefore, OAR 845-009-0135(6), by its terms, does not apply.

OLCC rules at some of those other stores, the OLCC imposed several restrictions on the license for US Market #109. The pertinent restriction in this case provides:

> "Licensee has Age Verification Equipment, as defined in OAR 845-009-0140(1)(b)[,] installed at all of its locations and will install Age Verification Equipment at any new locations at the time of licensure. *Licensee will require that all individual employees or licensees use Age Verification Equipment to verify the age of any patron who reasonably appears under the age of 26 who attempts to purchase alcoholic beverages.*"

(Emphasis added.) Roughly six months after the license restriction went into effect, the OLCC, the Marion County Sherriff's Office, and the Woodburn Police Department conducted a minor decoy operation to determine if Zarate—a clerk working at US Market #109—would sell alcohol to Nolte, who was 20 years old.

To that end, Nolte entered US Market #109, grabbed a 24-ounce can of beer from a cooler, brought it to the counter to purchase it, and gave Zarate his driver's license, which indicated that he was 20 years old and, hence, too young to lawfully purchase alcoholic beverages in Oregon. Zarate looked at Nolte's driver's license and, without using the age-verification machine installed at the store, sold the beer to Nolte. Shortly after the sale, an OLCC investigator issued a citation to Zarate for selling alcohol to a person who was less than 21 years old.[3]

In the course of issuing the citation, the investigator asked Zarate why he had failed to use the age-verification machine to verify Nolte's age before making the sale. Zarate responded that the machine was not working, and, at the investigator's insistence, Zarate scanned the investigator's driver's license, which produced a result on the machine's screen of "No applications." That result led the investigator to conclude that the machine was broken, but, despite Zarate's and the investigator's belief about the machine's condition, the machine was not completely inoperable; rather, only the

---

[3] In addition to the citation, licensee planned to suspend Zarate from work for a week as a sanction for his unlawful sale of alcohol to Nolte.

automatic license-scanning feature was malfunctioning. Licensee had known about the malfunctioning scanner for roughly a month before the incident, and it also knew that the machine could be used to verify a patron's age—notwithstanding the malfunction—by using the machine's keypad to manually enter the necessary information from a driver's license.

As a result of the sale, the OLCC charged licensee with two violations of agency rules and sought to cancel its license for US Market #109. The agency contended that licensee had violated OAR 845-006-0335(1) because Zarate had failed to verify Nolte's age before selling beer to him and had also violated OAR 845-005-0355(5) because licensee had failed to comply with the license restriction when Zarate did not use the age-verification machine to verify Nolte's age.[4] The critical inquiry throughout the ensuing contested case proceeding and on judicial review is twofold: (1) whether licensee's construction of the license restriction—*viz.*, that the language of the restriction merely imposed an obligation on licensee to require its employees to use age-verification equipment during appropriate alcohol sales—is the correct understanding of the restriction and (2) if licensee's construction is correct, whether, notwithstanding the fact that Zarate failed to use the age-verification machine before selling alcohol to Nolte, the OLCC met its burden of proving that

---

[4] OAR 845-006-0335(1) provides:

"Age Verification:

"(a) ORS 471.130 requires a licensee or permittee to verify the age of a person who wants to buy or be served alcoholic beverages when there is 'any reasonable doubt' that the person is at least 21 years old. * * * 'Reasonable doubt' exists if the person appears to be under the age of 26;

"(b) Whenever a licensee or permittee verifies age, he/she must verify it as ORS 471.130 requires (statement of age card or the specified items of identification) and must reject any obviously altered document or one which obviously does not identify the person offering it;

"(c) Licensees must require all their employees who sell, serve, oversee or control the sale or service of alcoholic beverages to verify age as subsection (a) of this section requires."

OAR 845-005-0355(5) provides:

"A licensee or permittee who has a restricted license or permit must exercise license or permit privileges only in compliance with the restriction(s). Failure to comply with the restriction(s) is a Category I violation."

licensee had violated the restriction by failing to require Zarate to use the machine.[5]

We begin with the predicate legal issue: the proper construction of the license restriction. After a contested case hearing, an administrative law judge (ALJ) issued a proposed order in which he agreed with licensee's construction of the license restriction. However, the OLCC took a different tack in its final order. Contrary to the ALJ, the OLCC agreed with the construction of the restriction championed by the agency, the same construction on which the OLCC had relied in its final order in *US Market #180*—*viz.*, that to comply with the restriction, licensee's employees had to use age-verification equipment before making certain alcohol sales and, in doing so, had to verify that the patron was more than 21 years old. However, in our recent decision in *US Market #180*, we rejected the construction of the restriction on which the OLCC relies in this case.

The managing member of US Market #109 owns both US Market #109 and US Market #180, and the OLCC imposed the same license restriction on the licenses to sell alcohol at both stores. *See US Market #180*, 249 Or App at 667 (setting out license restriction). Similarly to this case, in *US Market #180*, the OLCC had sought to cancel the store's license based, in part, on a violation of OAR 845-005-0355(5) resulting, according to the OLCC, from the licensee's failure to comply with the license restriction when one of the licensee's employees sold beer to an underage patron after scanning the patron's driver's license with an age-verification machine, which indicated both that the sale was "approved" and that the patron was only 19 years old. 249 Or App at 668.

On judicial review of the OLCC's final order in that case, we concluded that the OLCC had misconstrued the restriction, and we reversed and remanded the final order so that the OLCC could apply the proper construction of it—*viz.*, the "restriction, by its terms, imposes an obligation on [the]

---

[5] Licensee did not challenge on judicial review the OLCC's conclusion that licensee had violated the age-verification requirement under OAR 845-006-0335(1).

licensee only to require that [the] licensee's employees use age-verification equipment when the employee, during a sale of alcoholic beverages, is fulfilling his or her *freestanding* age-verification obligation under OAR 845-006-0335(1)(a)." 249 Or App at 673 (emphasis in original). Importantly, implicit in that construction of the restriction is the premise that the OLCC should assess, among other things, whether the licensee had adequately trained its employee in the use of the age-verification machine.

Here, the OLCC initially evaluated the evidence under the same misunderstanding of the license restriction that it had applied in *US Market #180*, which led it to conclude that licensee had not complied with the restriction. Despite that error, the OLCC prophetically decided to evaluate the evidence under an alternative construction of the license restriction—*viz.*, the construction that licensee advances on judicial review and that we concluded in *US Market #180* was the proper one. The OLCC determined that, even under the latter construction of the license restriction, the OLCC had proved that licensee had violated the restriction and, therefore, had violated OAR 845-005-0355(5). Accordingly, we review the OLCC's alternative conclusion to determine if there is substantial evidence in the record to support the findings on which it is based. ORS 183.482(8)(c).

In support of its conclusion, the OLCC relied on three findings that, taken together, established that licensee had not instructed Zarate that he was required to use the machine's keypad to verify a patron's age before an alcohol sale. First, and most importantly, Zarate neglected to manually enter into the machine the pertinent information from the OLCC investigator's driver's license when the investigator asked Zarate to test the machine. Second, although the employee of licensee who was responsible for training other employees on OLCC compliance testified that she had instructed licensee's managers that, if the age-verification machine's automatic scanner were to fail during an alcohol sale, employees should use the machine's keypad, nothing in the record established that those managers had conveyed that instruction to Zarate or to other subordinate employees. Finally, although Zarate had signed a form that stated that

he had attended "quarterly refresher training" on licensee's alcohol sales policies and that he understood the store's policy regarding the use of age-verification equipment, nothing in the form indicated that the policy included an expectation that he was to use the machine's keypad when the automatic scanner was not working.

After reviewing the record, we conclude that there is substantial evidence in it to support those findings, which led to the OLCC's determination under the proper construction of the license restriction that licensee had failed to comply with the restriction. Accordingly, the OLCC did not err in concluding that licensee had violated OAR 845-005-0355(5).

However, there remains an issue regarding the OLCC's reasoning in imposing sanctions for the violation. The OLCC sought both to cancel US Market #109's license and to remove licensee from the Responsible Vendor program on account of the OAR 845-005-0355(5) violation. Moreover, as a consequence of licensee's OAR 845-005-0355(5) and OAR 845-006-0335(1) violations, the agency sought to deny a renewal application that licensee had filed for US Market #109's license. In its final order, the OLCC imposed all of those sanctions, but, in arriving at its decision, the agency cited and relied, in part, on the sanctions that it had imposed in *US Market #180*.[6]

Because we reversed and remanded the final order in *US Market #180*, which may cause the OLCC to reach a different decision on sanctions in that case, we must reverse and remand the final order in this case to allow the OLCC to reconsider the sanctions that it imposed on licensee.

Reversed and remanded for reconsideration.

---

[6] For example, on the denial of the renewal application, the OLCC asserted during the contested case proceeding that licensee's poor record of compliance with OLCC regulations was a basis for the denial. In its final order, the OLCC concluded that the assertion was well founded, reasoning that

"[t]his case closely resembles *US Market #180*, which also involved one Category I violation for violating a restriction on using age verification equipment, together with a Category III violation for a sale to a minor. As in *US Market #180*, the [OLCC] finds that one Category I violation, together with one Category III violation, is a poor record of compliance."