772 June 17, 2026 No. 567

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
ANDREW CHARLES CHADIM,
*Defendant-Appellant.*

Benton County Circuit Court
19CR77820; A181603

Joan E. Demarest, Judge.

Submitted February 5, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant. Andrew Chadim filed the supplemental brief *pro se*.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Megan Mizuta, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Remanded for resentencing; otherwise affirmed.

**JACQUOT, J.**

Defendant appeals a judgment of conviction entered after a jury trial for second-degree assault, two counts of attempted fourth-degree assault, and second-degree disorderly conduct. The charges arose from defendant's conduct outside a 7-Eleven store, where defendant attempted to bite an employee and bit a person who tried to restrain him, and he later tried to bite a medical technician taking his vitals in the emergency room. In his first six assignments of error, defendant challenges the trial court's denial of defendant's multiple requests to waive counsel and represent himself. In his seventh assignment of error, defendant challenges the trial court's denial of his motion for judgment of acquittal on the second-degree assault charge. Specifically, he argues that there was insufficient evidence to prove that the bite wound to the victim's arm constituted "serious physical injury." In his eighth assignment of error, defendant argues that the prosecutor made improper remarks during closing and rebuttal arguments—most of which defendant did not object to—which, he argues, resulted in defendant being denied a fair trial. Finally, defendant makes additional arguments in a supplemental brief, none of which provide a basis for reversal.[1] We remand for resentencing based on defendant's fifth assignment of error in which he argues the trial court should have granted his motion to represent himself and waive counsel.

## I.  THE PROSECUTOR'S REMARKS DURING CLOSING

We begin with defendant's eighth assignment of error, which concerns statements the prosecutor made during closing argument. The statements that defendant objected to were not improper, and the un-objected-to statements were not obviously improper. For a prosecutor's statements

---

[1] Defendant's supplemental brief does not comply with the requirements of ORAP 5.45, including setting out assignments of error that identify rulings of the trial court and demonstrating preservation. In addition, the brief fails to sufficiently develop any legal argument. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

in closing argument to rise to the level of plain error, it must be "beyond dispute" that they "were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks omitted). To meet that standard, the statements, individually or collectively, must have been both obviously improper *and* incurable. *State v. Perez*, 373 Or 591, 606, 568 P3d 940 (2025). A statement was obviously improper if its only possible interpretation made it an impermissible remark, whereas a statement was not obviously improper if it was susceptible to more than one interpretation, at least one of which was not impermissible. *Id.* at 607. As for curability, "prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023), *rev den*, 374 Or 143 (2025) (emphasis in original). Here, none of the statements that defendant identifies for plain-error review were obviously improper, nor was defendant denied a fair trial.

## II.   SUFFICIENCY OF THE EVIDENCE FOR SERIOUS PHYSICAL INJURY

We turn next to defendant's seventh assignment of error, a challenge to the denial of a motion for judgment of acquittal on second-degree assault, because a reversal on that basis would provide the most complete relief on that count. We conclude that there was sufficient evidence for the "serious physical injury" element of second-degree assault, and therefore we affirm on that assignment.

We provide a brief overview of pertinent evidence the state presented at trial. Defendant was going through the trash outside a 7-Eleven store. A store employee, L, told defendant to stop. Defendant moved toward L, grabbed L's arm with both hands, and tried to bite L's arm; L was able to avoid the bite. A bystander, W, tried to calm defendant, but defendant hit her in the head when she looked away from him. W tried to restrain defendant. During the ensuing scuffle, defendant bit W's inner forearm. The bite lasted 60 to 90 seconds, during which W tried to get free, but defendant only bit harder. Another person assisted W, and after

W elbowed the side of defendant's head, she was able to wrench her arm free.

While she was still at the scene, the wound on W's arm was raised, swollen, bruised, and oozing blood. W said that it felt like her arm was broken. She went to the hospital. She was prescribed an antibiotic and told to change the dressings and put antiseptic ointment on the wound. Her arm remained swollen and painful. It was bruised from her elbow to her fingers. The wound became infected and about a week after the incident W had to go back to the hospital. She was prescribed a different antibiotic. Her arm was swollen for about three weeks and it took another three weeks for the wound to stop oozing and close. The forearm bruising lasted over a month. W also testified that the range of motion of her hand was affected. During the time it was swollen, she could not make a fist. She also said that later, the scar tissue would "contract and would get really tight" and W "would have to stretch" by bending her wrist back to stretch the scar tissue. W also experienced numbness and tingling at the wound site, and if it was touched or bumped, she experienced an "electric shock kind of feeling." At the time of the trial—three years after the bite—the surface of the scar was still numb.

The state presented photos of the bite as it looked initially, and at several stages of healing. The jury also saw the one-and-one-half by one-and-one-half inch scar on her forearm. She testified that people would notice it when it was not covered up with clothing or make-up and would ask her what caused it. She wore long sleeves even in summer, or applied make-up to the scar to conceal it.

At the close of the state's evidence, defendant moved for judgment of acquittal on the second-degree assault count, arguing that the state failed to prove the serious physical injury element. The state argued that there was sufficient evidence. The trial court denied the motion, explaining:

> "Most compelling to me are the nerve damage that she described that I believe I heard she indicated is still the case, and that to me says that the function of the organ of the skin is impaired, because it's not conveying the information to the brain that it would be expected to.

"So she's at risk of, for example, if something hot were to touch her there where she has the nerve damage she's at risk of getting burned whereas a person whose skin organ had not been impaired by significant scarring like that.

"The fact that the motion of her hand was impaired for a period of time is also something that I'm taking into consideration."

When we review a challenge to the denial of a motion for judgment of acquittal, our task is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). ORS 161.015(8) provides that "serious physical injury" means "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

Below and on appeal, the parties focus on the "protracted disfigurement" and "protracted loss or impairment of the function of any bodily organ" portions of that definition. We focus only on the latter. We agree with the trial court that there was sufficient evidence of a protracted loss or impairment of the functions of the skin. *See State v. Stone*, 326 Or App 200, 207, 532 P3d 90, *adh'd to as modified on recons*, 328 Or App 203 (2023) (injuries, including cuts and gashes that "disrupt the skin's function of protecting the inner body from infection" qualify as "impairment of physical condition"). In particular, the skin functions to keep out infection and to provide tactile sensations for safety and for information about the world around us, and when it is functioning properly it is elastic enough to stretch and move with the movements of our bodies. The evidence that W had an infection that required treatment, a restricted range of motion due to contraction of the scar, a lengthy period of tingling, "electric shock" feelings, and numbness—which, three years later, she was still experiencing around the site of the injury, was sufficient for the jury to find that defendant caused a protracted loss or impairment of the function

of a bodily organ, and thus serious physical injury. The trial court did not err when it denied the motion for judgment of acquittal.

## III.   DEFENDANT'S REQUESTS TO WAIVE COUNSEL AND REPRESENT HIMSELF

We next turn to defendant's first through sixth assignments of error. Defendant contends that, on six occasions, the trial court erroneously denied his requests to waive counsel and represent himself. We reject his first four assignments of error, but we conclude that the trial court did err on the occasion identified in defendant's fifth assignment. The trial court, on that occasion, failed to assess, at a hearing on defendant's request to waive counsel, whether defendant's waiver was intelligent and understanding when he had sent the court a written waiver and requested a new attorney to be appointed as his legal advisor before sentencing. We therefore remand for resentencing. Given that disposition, we do not reach the sixth assignment of error.

Under Article I, section 11, of the Oregon Constitution, a criminal defendant is guaranteed both the right to counsel and the right to self-representation. *State v. Hightower*, 361 Or 412, 416, 393 P3d 224 (2017). The trial court must deny, however, a request to represent oneself if the request is not knowing or voluntary and the court may deny the request under Article I, section 11, "if the request is unclear or equivocal or if it would result in the disruption of the orderly conduct of the trial." *State v. Glasby*, 301 Or App 479, 484, 456 P3d 305 (2019). When a court denies such a request, "the record must include some indication of how the trial court actually weighed the relevant competing interests involved[;] *** express findings are not required," as long as the reasons are clear, but "it is not sufficient that an appellate court may be able to speculate about what might have been the trial court's rationale for its decision." *Hightower*, 361 Or at 421.

We briefly describe in order the first five assignments of error including the request and the trial court's response.

A.  *First Assignment of Error.*

The court held an *in limine* hearing regarding W's medical records and some prior bad acts evidence that could be relevant for a noncharacter purpose. Defendant wanted to stipulate to the admission of the prior bad acts evidence and he wanted to represent himself if defense counsel refused to do so. The court attempted to clarify defendant's request, asking, "[D]o you want to represent yourself at trial or do you want [defense counsel] to represent you?" and telling defendant that "[the court] needs a yes or no answer[;]" "I need a clear answer, [defendant]." Defendant's answer was not clear. The court asked more questions and explained that certain decisions were solely for defendant to make, but other decisions, such as strategy were up to defense counsel. The court asked defendant about representing himself, and defendant would only give conditional answers, saying that it was up to defense counsel whether he would continue, based on whether he stipulated to admission of the evidence. The trial court then attempted to suggest that defendant and defense counsel talk, but that conversation could not be completed. We quote a substantial portion of it here because it is representative of the interactions between the court and defendant, and defendant's actions preventing effective communication between the court and defendant.

"THE DEFENDANT:   So the question really is up to [defense counsel].

"THE COURT:   So you and him can—

"THE DEFENDANT:   (Indiscernible)—

"THE COURT: —discuss more when you have (indiscernible)—

"THE DEFENDANT:   —(indiscernible) represent me on my terms (indiscernible) my attorney—

"THE COURT:   —on Tuesday. Stop.

"THE DEFENDANT:   If he's not willing to represent—

"THE COURT:   Stop.

"THE DEFENDANT:   —me on my terms, I don't want him as my attorney. I just answered your question.

"THE COURT:   All right. So what we'll have—what we'll do is have Mr.—

"THE DEFENDANT:   (Indiscernible).

"THE COURT:   —[defense counsel] (indiscernible) something needs to change. But we are having trial regardless. We are having—

"THE DEFENDANT:   Thank you.

"THE COURT:   —trial with a jury starting Tuesday morning."

Because defendant's request was conditional, and he did not express an unequivocal wish to waive counsel, the trial court did not err. The court deferred ruling on the motion. It asked for more information on certain points, and, after admitting the prior bad acts evidence that defendant wanted to have admitted but defense counsel had opposed, the court asked if there was still a disagreement. Defense counsel said that he and defendant would talk, and the trial court asked to be informed if there was still an issue.

B.   *Second Assignment of Error.*

During the trial, the court had to address defendant's behavior multiple times. He made numerous unresponsive and inappropriate statements during his testimony. He referred to a prior mistrial, to being restrained at the jail, and to his competency to stand trial, among other things. The court admonished him that he could be held in contempt and that he could be removed from the courtroom for the rest of the trial. Defendant continued to interject and talk over the judge during multiple discussions. After the defense rested and before closing arguments, defendant requested to present his own closing argument after defense counsel's closing. Defendant explained that there was information he wanted to tell the jury and put on the record. Defendant continued to interrupt and talk over the trial court during the discussion. The trial court denied defendant's request as being too disruptive and "chaotic." For similar reasons as above, the trial court did not abuse its discretion in denying or deferring ruling on defendant's request. Further, this request seemed to be more motivated

by a desire to address the jury than a request to waive counsel and proceed *pro se*.

C.   *Third Assignment of Error.*

After discussing presenting his own closing argument, defendant requested to address the jury after they were done deliberating and rendering their verdict. Again, he wanted to put certain evidence in the record. Despite the jury beginning deliberations, the trial was not over. The jury was set to deliberate on guilt, and the trial would continue on an enhancement fact if there was a guilty verdict. The trial court did not abuse its discretion in denying defendant's request.

D.   *Fourth Assignment of Error.*

After the verdict, defendant asked to address the jury. The court said that he could submit a written statement, and that it might read portions of the statement to the jury. Defendant wanted to make additional arguments, question additional witnesses and present additional evidence. While the trial court attempted to explain that defendant could not make a closing argument at that time, defendant again interrupted and talked over the judge, to the point that conversation seemed impossible. The court confirmed that defense counsel was not relieved and ended the conversation. The court's ruling was not an abuse of discretion under the circumstances.

E.   *Fifth Assignment of Error.*

The trial court held a hearing on defendant's request to waive counsel before sentencing. Defendant appeared with his trial attorney, and a new attorney, Flinn, whom he wanted the court to appoint as his legal advisor. Defendant had sent the court a written waiver of counsel. Defendant explained that he wanted Flinn's help with an appeal, but he wanted to represent himself and have a new trial.

In *Glasby*, 301 Or App 479, the defendant asked to represent himself multiple times, and the court understood him to be attempting to waive counsel in at least one of those requests. We held that the court was therefore required to address the waiver and determine whether the defendant's

decision was an intelligent and understanding one. *Id.* at 485-86. *See also State v. Nyquist*, 293 Or App 502, 504-505, 427 P3d 1137 (2018).

Here, although defendant gave some inconsistent answers about whether he wanted to represent himself, the trial court concluded that he wanted to waive counsel. While the court may have had understandable concerns about defendant's self-representation causing disruption and costing the court resources, once the proceedings no longer involved a jury and the possibility of a mistrial, the consequences of defendant's disruptive behavior were more limited. The court should have engaged in a colloquy with defendant to determine if his waiver was intelligent and understanding, and, if so, it should have made a record of its exercise of discretion in relation to its concerns about managing the sentencing proceeding and courtroom. Accordingly, we remand for resentencing, at which defendant may request to represent himself.[2] *See, e.g.*, *State v. Dunn*, 318 Or App 744, 748, 508 P3d 586, 589 (2022) (reversing and remanding when the "trial court erred by failing to conduct a meaningful colloquy, and then by denying defendant's motion to waive counsel, having not conducted a proper inquiry"); *State v. Edgtton*, 314 Or App 236, 237, 494 P3d 380 (2021) (remanding for resentencing because the record did "not reflect whether or how the court exercised such discretion").

Remanded for resentencing; otherwise affirmed.

---

[2] As noted, given our disposition on this assignment of error, we need not reach defendant's sixth assignment.