Argued and submitted July 22, affirmed October 20, 2010

Joyce ESTREMADO,
*Respondent,*

*v.*

JACKSON COUNTY,
*Respondent,*

*and*

Thomas LOWELL,
*Petitioner.*

Land Use Board of Appeals
2010001; A145590

241 P3d 748

James R. Dole argued the cause and filed the brief for petitioner.

Mark S. Bartholomew argued the cause for respondent Joyce Estremado. With him on the brief were Benjamin M. Bloom and Hornecker, Cowling, Hassen & Heysell, LLP.

Frank Hammond waived appearance for respondent Jackson County.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioner filed an application seeking approval to build a dwelling on a parcel of forest property that he owns in Jackson County. The county approved the application. Respondent, who owns neighboring land, appealed to the Land Use Board of Appeals (LUBA). LUBA issued a final opinion and order remanding the case to the county for evaluation of whether the parcel met certain access requirements. Petitioner now seeks judicial review of that order, *see* ORS 197.850, and, on review, we affirm.

The background facts of this case are not disputed by the parties and are set out in LUBA's order. We have supplemented those facts with pertinent procedural history. The property at issue in this case is a vacant five-acre parcel zoned as Woodland Resource." The parcel was created in 1980 as part of a minor land partition. To obtain such a partition for residential use in 1980, an applicant had to show that the proposed parcel of land would have "legal access." At that time, "legal access" meant that the parcel would "abut a public road or approved way for a distance of at least 25 feet." 1978 Jackson County Zoning Ordinance, Art IX, § 5. If that access requirement was not met, the county could nonetheless approve the partition application if it included "a statement * * * that [the proposed parcels] will not be used for residential purposes and that the applicant will record an instrument providing notice that the parcel is not served with legal access and cannot be used for residential purposes until legal access is provided." *Id.* In this case, at the time of the 1980 partition application, "access to the parcel was provided by an existing easement road running from Galls Creek Road, a public road, through [respondent's] property to the subject property. The easement road serves multiple properties." That access did not constitute "legal access" for residential purposes and, for that reason, the partition application specified that the parcels would be used for "[f]orestry and/or agricultural purposes only * * * no residential use."

Several years after the partition was approved, the easement agreement became the subject of litigation between petitioner and respondent. As a result of that litigation, the circuit court in 1998 concluded that the easement

allowed for "access to the subject property and other properties for residential use." That ruling determined only the scope of the easement and did not determine whether there was "legal access" to the property for the purpose of residential development pursuant to Jackson County's land use ordinances.

In May 2009, pursuant to the appropriate provision in the Land Development Code of Jackson County (LDO), petitioner filed an application seeking approval to build a residence on the subject property. The planning department approved the application, and respondent appealed the decision to a hearing officer. The hearing officer discussed the 1980 partition decision: "The Partition created two parcels of 5 acres and one of 30 acres. However, it limited the use on the Parcels to forest and agriculture since there was no evidence of legal access." The hearing officer also explained:

> "the restriction in the Partition to resource uses of the Parcels was not an absolute bar. Rather it was a limitation that could be eliminated by the establishment of adequate access. This conclusion is confirmed by a Zoning Clearance Sheet dated May 31, 1990, which authorized the assigning of addresses to the Parcels. A notation on that document states 'County recognizes [the Parcels] as separate lots. However, no building permits can be issued on these lots until *county recognized access* is provided.' "

(Brackets in original; emphasis added.) The hearing officer noted that, under LDO 10.4.3, enacted in 2004, "county recognized access" could be provided not only by an abutting public road, but also by an *exclusive* easement as well. By negative inference, the hearing officer appeared to reason, a *nonexclusive* easement such as petitioner's would appear *not* to provide county-recognized access.[1] That inference,

---

[1] LDO 10.4.3 provides, in part:

"Legal, practical, and physical access must be provided to all parcels or lots created as part of a land division. Access will be by one (1) of the following means:

"1) Frontage abutting a publicly maintained or approved private road (see Chapter 9) for a distance of at least 25 feet;

"* * * * *

"3) A recorded exclusive easement no less than 14 feet in width that connects to a publicly maintained road or approved private road for driveway

however (the hearing officer went on to conclude), could not be reconciled with LUBA's decision in *Curtin v. Jackson County*, 55 Or LUBA 79 (2007); under *Curtin*, petitioner's nonexclusive easement had to "be recognized by the county" as "legal access" to the subject property. Accordingly, the hearing officer upheld the approval of petitioner's application.

Respondent appealed to LUBA, asserting that *Curtin* did not alter the conclusion that, before the county could remove the "no residential use" limitation imposed in 1980

> "and approve residential use of the subject property, the county must find that the easement road satisfies the 1980 * * * 'legal access' requirement that the subject property abut a 'public road or approved way' for at least 25 feet. In the alternative, [respondent argued] that the 1980 'legal access' requirement could be met if the parcel satisfies the current minimum access standards for land divisions found at [LDO] 10.4.3 * * *."

Thus, respondent maintained, because petitioner's parcel neither abutted a road nor had access by way of an *exclusive* easement, the hearing officer erred in lifting the "no residence" limitation. Petitioner, on the other hand, asserted that the hearing officer had correctly concluded that the outcome in the case was controlled by LUBA's decision in *Curtin* and that, based on the construction of Jackson County's LDO in that case, the nonexclusive easement road was sufficient to provide the required "legal access" to the parcel.

LUBA first examined the relationship between the restriction imposed on the subject property and the existing easement road:

> "The 1983 easement provides a right of access to the parcel in the sense that use of the road is one of the bundle of real property rights possessed by the owner of the subject property. However, it does not necessarily follow that the easement road constitutes 'legal access,' as that term was used in the 1980 zoning ordinance. There is no dispute that, under the 1980 land division ordinance, a new parcel

---

access. A prescriptive easement is not considered suitable access for division purposes[.]"

intended for residential use was required to have more than just a legal right to cross a neighbor's property for access. Under the 1980 land division ordinance, new parcels were required to 'abut a public road or approved way for a distance of at least 25 feet.' The 1980 [limitation of the property to forestry and/or agricultural uses] was applied to prohibit residential use unless and until access that satisfied that standard, or a future standard that replaced that standard, was provided. The hearings officer's decision does not explain *why the 1980 use limitation to farm or forest use can be lifted or ignored based on the existing easement road* that apparently does not comply with either the 1980 requirement for 'legal access' or LDO 10.4.3."

(Emphasis added.) LUBA also addressed the hearing officer's conclusion that "the reasoning in *Curtin* * * * precludes the county from requiring [petitioner] to provide 'legal access' to the subject property in accordance with the 1980 [requirements] or LDO 10.4.3." It determined that *Curtin* dealt with road improvement design standards, as set out in LDO Chapter 9, not with access standards:

"[T]he hearing officer's reliance on *Curtin* is misplaced. In *Curtin*, the county denied a forest template dwelling application because a pre-existing private road to the property did not meet the county's road improvement design standards at LDO 9.5.1 and 9.5.3.[2] However, based on the language of LDO 9.5.1, we concluded that the road improvement design standards in LDO Section 9.5 applied only when a new private road is constructed, and therefore did not provide a basis to deny the forest template dwelling, which had access via an existing private road that did not meet the LDO 9.5.1 road improvement design standards. *Curtin* does not stand for the proposition that under no circumstances can the county require that access to a lot or parcel meet applicable county residential minimum *access* standards. Our analysis in *Curtin* turned on the specific

---

² LDO 9.5.3 provides that private roads may provide access to "no more than 12 lots or parcels" and requires that such roads meet certain standards with respect to, among other things, location, width, signage, separation from other roads, grade, surface, and culverts. Pursuant to LDO 9.5.1, the access design standards

"of this Section apply to the creation of newly publicly dedicated roads, private roads and driveways to serve as access to new lots as part of a land division, or to provide access to a lot prior to its development. Additional, higher standards may be required if deemed necessary by the County to ensure that safe and adequate access to lots and parcels will be provided."

language of LDO 9.5.1, and did not address other code requirements or other circumstances."

(Emphasis in original.) Based on its conclusion that *Curtin* did not determine the outcome in the present case, LUBA remanded this case for a determination of whether "the easement road satisfies either the 1980 legal access requirement or the current LDO 10.4.3 minimum access requirement for parcels that are to be developed for residential use."

On appeal, petitioner asserts that his nonexclusive easement now qualifies as "legal access"; that, as a result, he has met the development requirement from the 1980 approval established as a prerequisite for building a residence; and that, in reaching the opposite conclusion, LUBA erred. That error, petitioner appears to argue, encompasses two subsidiary errors. First, LUBA failed to recognize that *Curtin* necessarily implies that a nonexclusive easement provides sufficient access for development purposes. Second, he argues, his easement provides sufficient access to allow for residential development on the parcel based on LDO 1.7.5(C), which provides:

> "[L]ots and parcels that were lawfully created before the effective date of this Ordinance that do not meet the * * * access requirements set forth herein will be entitled to the same development rights as conforming lots or parcels, once access is provided. (See Section 10.2.1)"

This ordinance was enacted in 2004; the "access requirements set forth herein," according to petitioner, are determined according to the definition of "access" in LDO 13.3(2): "A legally defined area available, and practical at the time of development, for motor vehicle ingress and egress to a lot or parcel." Thus, petitioner's argument is that the 2004 enactment of LDO 1.7.5(C) effectively superseded the 1980 "abutting road" requirement. To bolster that contention, petitioner points to LDO 1.7.2(D), pursuant to which,

> "[a]ny prior land use approval * * * valid on the effective date of this Ordinance [2004] will remain valid * * *. In cases where the development standards of this Ordinance are less restrictive than those in effect at the time of approval, the standards of this Ordinance may be substituted."

The "development standards of this Ordinance," according to petitioner, require only "access" as defined above, not "legal access" as that term was defined in 1980; thus, the current development standards are less restrictive than the development standards "in effect at the time of approval," and should therefore apply.

We begin our analysis with petitioner's argument based on *Curtin*. For the reasons expressed by LUBA in its opinion, we conclude that *Curtin* does not prevent the county from applying the access requirements at issue in this case. *Curtin* deals with the *design* standards in LDO chapter 9, not *access* standards. Access was not at issue in that case, and we can discern no reason to presume that the ruling with respect to design standards should be extended. Further, we are reluctant to second-guess LUBA's interpretation of the meaning or scope of one of its own opinions.

Petitioner's argument based on LDO 1.7.5(C) is more complex. Whether it has merit depends on whether the term "access" in that provision can be equated with the term "legal access." Further, petitioner's argument does not deal with LDO 11.5, which provides:

> "Lots or parcels created in compliance with * * * [LDO] 1.7.5 (Preexisting Uses and Lots) * * * are lawfully created and entitled to the development rights associated with any other lot or parcel created in accordance with this Ordinance, *unless otherwise stipulated in the division approval.*"

(Emphasis added.) The approval in this case prohibited residential uses. We need not deal with this issue, however, because petitioner did not explain or present it before LUBA. Instead, as noted, his contention below was that LUBA's decision in *Curtin* controlled the outcome here. Accordingly, we conclude that petitioner failed to adequately preserve that issue for our review, and we do not address it. *See* ORAP 5.45(1); *Melton v. City of Cottage Grove*, 131 Or App 626, 628, 887 P2d 359 (1994) (declining to address issues not preserved before LUBA).

Affirmed.