Argued and submitted October 7, affirmed November 24, 2010

Michelle BARNES,
*Respondent,*

*v.*

CITY OF HILLSBORO
and The Port of Portland,
*Petitioners.*

Land Use Board of Appeals
2010011; A146145

243 P3d 139

Richard H. Allan argued the cause for petitioners. With him on the joint brief were Ball Janik, LLP, and David F. Doughman and Beery, Elsner & Hammond, LLP.

William K. Kabeiseman argued the cause for respondent. With him on the brief was Garvey Schubert Barer.

Chad A. Jacobs filed the brief *amicus curiae* for League of Oregon Cities.

Brian T. Hodges and Meriem L. Hubbard filed the brief *amicus curiae* for Pacific Legal Foundation.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Intervenor Port of Portland and respondent City of Hillsboro (respondents) petition for judicial review of an order of the Land Use Board of Appeals (LUBA) in which LUBA reversed Ordinance 5935, the city's ordinance that "amend[ed] the city zoning map to apply the city's Airport Use * * * zone to the Hillsboro Airport and the city's Airport Safety and Compatibility Overlay * * * zone to surrounding properties."[1] In reversing Ordinance 5935, LUBA concluded that a separate, unappealed ordinance—*viz.*, Ordinance 5926, which established those airport-related zones—violated federal and state constitutional provisions. On review, respondents do not challenge LUBA's conclusion that Ordinance 5926 was constitutionally infirm. Instead, they contend that LUBA lacked "jurisdiction" to have considered petitioner's constitutional challenges because they were directed at Ordinance 5926 rather than Ordinance 5935, which was the subject of the present appeal to LUBA. Because we conclude that respondents' contentions on judicial review were not preserved before LUBA, we affirm.

We take the facts from LUBA's order.

"In 2005, the city commissioned a study that recommended adoption of new zones for the Hillsboro Airport, which is owned and operated by intervenor Port of Portland. Accordingly, in 2009, the city adopted ordinances 5925 and 5926, which amended the Hillsboro Comprehensive Plan and the Hillsboro Zoning Ordinance (HZO), respectively, to create two new zones, the [Airport Use (AU)] and [Airport Safety and Compatibility Overlay (ASCO)] zones.[2] The new AU zone allows a variety of airport related uses. The ASCO zone is intended to be applied to property within 6,000 feet of the airport, and imposes various limitations on uses and new development within six subzones, depending on proximity to the airport and its runways.

"Under Ordinance 5926, development in ASCO subzones 2, 3, 4, and 5 and 6 is subject to the obligation to

---

[1] Because we quote extensively from LUBA's decision in this case, we refer to the parties in light of their designations before LUBA.

[2] As LUBA noted, "Ordinance 5926, creating the AU zone and ASCO zone, is codified at HZO chapters 135A and 135B."

provide an 'avigation easement' to the Port prior to recording land division plats or issuing certificates of occupancy. Ordinance 5926, Section 135B(C)(6) defines 'avigation easement' as:

" 'A type of easement which conveys the following rights:

" '[1] A right-of-way for free and unobstructed passage of aircraft through the airspace over the property at any altitude above a surface specified in the easement (set in accordance with Federal Aviation Regulations Part 77 criteria).

" '[2] A right to subject the property to noise, vibrations, fumes, dust, and fuel particle emissions associated with normal airport activity.

" '[3] A right to prohibit the erection or growth of any structure, tree, or other object that would penetrate the imaginary surfaces as defined in this ordinance.

" '[4] A right-of-entry onto the property, with proper advance notice, for the purpose of marking or lighting any structure or other object that penetrates the imaginary surfaces as defined in this ordinance.

" '[5] A right to prohibit electrical interference, glare, misleading lights, visual impairments, and other hazards to aircraft flight as defined in this ordinance from being created on the property.'

"Ordinances 5925 and 5926 did not, however, apply the AU or ASCO zones to any property in the city when those ordinances were adopted in 2009. Following adoption and acknowledgment of Ordinances 5925 and 5926, the city initiated a legislative zoning map amendment process to apply the AU and ASCO zones to approximately 7,000 properties located in or near the Hillsboro Airport. The city proposed to rezone the Airport from the current M-2 Industrial and MP Industrial Park zoning, in which the Airport is a nonconforming use, to the AU zone. The city proposed applying the ASCO zone to a number of properties within 6,000 feet of the Airport. On January 19, 2010, the city council adopted Ordinance 5935, which amends the city zoning

map to apply the AU and ASCO zones as proposed. This appeal of Ordinance 5935 followed."

(Footnote omitted; third through seventh brackets in LUBA's order.)

As pertinent to this judicial review, petitioner raised two assignments of error before LUBA contending that Ordinance 5926, which established the airport-related zones, was constitutionally infirm.[3] First, as explained by LUBA, petitioner contended that HZO 135B required the owners of property within the pertinent zone "to provide the Port of Portland with an avigation easement as a condition of development" and that such a requirement is "facially inconsistent with the Fifth Amendment to the United States Constitution, which prohibits taking private property for public use, without just compensation, and with the similar provisions of Article I, section 18[,] of the Oregon Constitution." Second, as described by LUBA, petitioner contended that "several provisions of HZO 135A governing the AU zone violate Article I, section 21[,] of the Oregon Constitution, which prohibits the delegation of legislative authority."

With regard to the first assignment, although respondents asserted that petitioner's constitutional challenges were without merit, they contended, as a preliminary matter, that petitioner's arguments were "outside the scope of LUBA's review because they collaterally attack existing legislation arising out of a distinct, prior land use decision that is not the subject of this appeal." Specifically, respondents asserted that petitioner identified only "Ordinance No. 5935" as the subject of its appeal to LUBA and that petitioner did not assert that Ordinance 5935 was itself constitutionally flawed.[4]

Respondents' position in that regard was predicated on LUBA's opinion in *Butte Conservancy v. City of Gresham*, 47 Or LUBA 282, *aff'd without opinion*, 195 Or App 763, 100

---

[3] Petitioner also raised a third assignment of error concerning whether the city's decision complied with Statewide Land Use Planning Goal 12 and the Transportation Planning Rule. LUBA's resolution of that assignment is not at issue on review.

[4] Respondents raised the same contentions with regard to the second assignment of error.

P3d 218 (2004). Respondents contended before LUBA that *Butte Conservancy* stands for the proposition that a successful challenge to a land use decision that is not the subject of a petitioner's appeal to LUBA cannot be the basis of a reversal or remand of the decision that is the subject of the appeal.[5] Specifically, respondents asserted that

> "LUBA has never held that in an appeal of a decision implementing a zone change, a person may challenge an existing underlying standard of the zone when that standard is not applied in the zone change decision itself. This is precisely what Petitioner seeks to do in this appeal. It is analogous to a property owner whose property is rezoned from zone 'X' to zone 'Y' challenging the constitutionality of an existing setback in zone Y, when that setback is not being applied in the decision being appealed. To the contrary, LUBA and the Oregon Court of Appeals have rejected this kind of untimely challenge, and have held that a person may only challenge a land use regulation or decision that is the subject of the decision being appealed."

In sum, before LUBA, respondents concluded that, "[a]s [LUBA] held in *Butte Conservancy*, such a collateral attack is outside LUBA's scope of review and does not provide a basis to reverse or remand" Ordinance 5935, which was the subject of the appeal to LUBA. (Footnote omitted.)

Of significance, respondents did not contend that specific statutes or administrative rules limited LUBA's ability to review petitioner's constitutional challenges. Moreover, they did not contend that such a limitation was necessarily implied from the overall context of the statutes and rules that regulate land use in this state. Rather, their challenge to reviewability before LUBA was predicated exclusively on *Butte Conservancy* and related cases applying the same principle, which themselves were not predicated on an analysis of the statutory or regulatory scheme.

LUBA disagreed with respondents' contention that the constitutional challenges were not cognizable in the appeal of Ordinance 5935. Recognizing the limited scope of respondents' contention, LUBA concluded that *Butte*

---

[5] In a footnote in the brief to LUBA, respondents cited several other LUBA opinions for the same proposition.

*Conservancy* was inapposite to the present circumstances and declined respondents' invitation to extend the reasoning of that case. Specifically, LUBA explained:

"The city and intervenor respond, initially, that petitioner's constitutional challenge to the HZO 135B avigation easement requirement is in essence an impermissible 'collateral attack' on Ordinance 5926, which is not before LUBA in this appeal. According to respondents, the decision that is before LUBA in this appeal, Ordinance 5935, simply amends the city's zoning map to apply the AU zone and ASCO zone to various properties within the city. Respondents argue that Ordinance 5935 did not amend HZO 135B in any way, and that petitioner cannot advance a facial constitutional challenge to HZO 135B in an appeal of Ordinance 5935. We understand respondents to argue that the HZO 135B avigation easement requirement could be challenged only by filing a timely appeal of Ordinance 5926, or by appealing a quasi-judicial land use decision that actually applies HZO 135B to approve or deny an application to develop property within the ASCO zone.

"We disagree with respondents that petitioner [is] precluded from advancing a facial constitutional challenge to the HZO 135B avigation easement requirement in the present appeal, as an impermissible 'collateral attack' on Ordinance 5926. The only support that respondents cite for that proposition is *Butte Conservancy * * **, in which we held that in an appeal of a final subdivision plat decision the petitioner could not challenge the correctness of an earlier, final decision that modified the tentative subdivision plat approval. However, *Butte Conservancy* did not involve separate legislative decisions that adopt and then apply zoning regulations, nor constitutional challenges to such regulations. Respondents are correct that, because the ASCO zone is deemed acknowledged to comply with the statewide planning goals, if petitioner attempted in this appeal to argue that the ASCO zone is inconsistent with one or more statewide planning goals, such a challenge would be precluded by acknowledgment. However, acknowledgment of the ASCO zone does nothing to insulate that zone from challenge on statutory or constitutional grounds. We see no principled reason why such statutory or constitutional challenges cannot be advanced in an appeal of a subsequent legislative ordinance that, for the first time, applies the ASCO zone to specific properties in the city.

"Further, adoption of new zones and associated zoning regulations can, as in the present case, be effected in two separate ordinances, one that adopts the new zone but does not apply it to any property, and a second that actually applies the new zone to specific properties. In that circumstance, the second decision is almost certainly the first time that the city notifies property owners that their property is now subject to the new zone and its requirements. ORS 215.503, also known as 'Ballot Measure 56,' requires counties to provide notice to affected property owners when 'rezoning' their property. ORS 215.503 did not require the city to provide its citizens Ballot Measure 56 notice of Ordinance 5926, and the city presumably did not provide such notice. As a practical matter, then, an appeal of the ordinance that applies the new zone to specific properties is the first reasonable opportunity many affected or concerned persons affected would have to raise a facial constitutional challenge to the zone. Accordingly, we decline respondents' invitation to extend the reasoning in *Butte Conservancy*, because in many cases the consequences of that extension would be that affected persons would essentially be precluded from advancing a facial challenge to the new zone, and would be limited to as-applied challenges when the city ultimately applied the new zoning requirements to deny or condition proposed development."

Ultimately, LUBA issued its order reversing Ordinance 5935. Thereafter, respondents sought judicial review.

On review, respondents raise two assignments of error. In their first assignment, respondents assert that "LUBA lacked jurisdiction" to decide petitioner's assignments of error because they "assigned error to a land use decision that was not the subject of the appeal." In the second, they assert that "LUBA lacked a legal basis for reversing [Ordinance 5935] on constitutional grounds where [petitioner] did not identify, and LUBA did not address, any constitutional defect in the land use decision that was appealed."

As respondents correctly acknowledge in their brief in this court, LUBA had jurisdiction to review Ordinance 5935. In light of that acknowledgment, we understand

respondents' assignments of error to reduce to a single, dispositive legal issue: Were petitioner's constitutional challenges reviewable within the context of the appeal of Ordinance 5935? With regard to that question, relying on specific statutes and administrative rules—which respondents never invoked before LUBA—respondents primarily contend that "the statutory framework under which LUBA reviews 'land use decisions'" limited LUBA's ability to review the constitutional challenges in this case.

 "Generally, a party must raise an issue to LUBA to preserve it for judicial review." *Just v. City of Lebanon (A122519)*, 193 Or App 155, 157-58 n 2, 88 P3d 936 (2004). "[W]hatever the abstract content of 'issue,' 'argument,' or 'authority,' the appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal."[6] *State v. Taylor*, 198 Or App 460, 469, 108 P3d 682, *rev den*, 339 Or 66 (2005). Just as a court, LUBA is not obligated to make or develop a party's arguments when the party does not endeavor to do so itself. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (noting generally that "it is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself").

 Applying those principles here, respondents' contentions on review are qualitatively different from those that they raised to LUBA, and, consequently, are not preserved. As previously described and as LUBA noted, respondents' contention before LUBA was singular and narrow in its focus—that is, that petitioner's constitutional challenges constituted an impermissible collateral attack on Ordinance

---

[6] *See also Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (reasoning that "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court"); *Hammer v. Clackamas County*, 190 Or App 473, 480, 79 P3d 394 (2003), *rev den*, 337 Or 34 (2004) (reasoning that, where the petitioners did not discuss a particular statute before LUBA or argue its applicability to the county's action, we would not reach the question whether the notice requirements of that statute had been satisfied).

5926 under LUBA's reasoning in *Butte Conservancy*. LUBA concluded that *Butte Conservancy* was inapposite. Nonetheless, on review, respondents do not assert that LUBA was incorrect in that regard.[7] Instead, referring to specific statutes and administrative rules, they raise a qualitatively different contention—that is, that "the statutory framework under which LUBA reviews 'land use decisions' " limited LUBA's ability to review the constitutional challenges in this case. For that reason, respondents did not preserve the issues that they raise on review concerning the reviewability of petitioner's constitutional challenges before LUBA. Accordingly, we affirm.

In sum, on review, respondents contend that the statutory framework under which LUBA reviews land use decisions limited LUBA's ability to review petitioner's constitutional challenges in this case. However, before LUBA, respondents' contention was based exclusively on *Butte Conservancy*, a case that does not implicate the statutes and rules on which respondents now rely. In its opinion, LUBA expressly indicated that it understood respondents' challenge to be based only on its reasoning in *Butte Conservancy*, rather than the statutory framework on which respondents now rely. Under those circumstances, respondents failed to preserve the issues that they raise on review.

Affirmed.

---

[7] *See Estremado v. Jackson County*, 238 Or App 93, 100, 241 P3d 748 (2010) ("[W]e are reluctant to second-guess LUBA's interpretation of the meaning or scope of one of its own opinions.").