Submitted May 1, affirmed on petition and cross-petition July 15, 2015

SOUTHCENTRAL ASSOCIATION
OF NEIGHBORS,
*Petitioner below*
*Cross-Respondent,*
*and*

Curt FISHER
and Jon Christenson,
*Intervenors below,*
*and*

Timothy COWAN,
*Petitioner*
*Cross-Respondent,*

*v.*

CITY OF SALEM,
*Respondent,*
*and*

SALEM HOSPITAL,
*Intervenor-Respondent*
*Cross-Petitioner.*

Land Use Board of Appeals
2014083; A158634

355 P3d 208

Timothy Cowan filed the briefs *pro se*.

Keith J. Bauer, Michael J. Walker, and Parks Bauer Sime Winkler & Fernety LLP, filed the brief for respondent-cross-petitioner.

Kevin J. Jacoby, Tyler P. Malstrom, and Connolly & Malstrom, filed the brief for cross-respondent Southcentral Association of Neighbors.

No appearance for respondent City of Salem.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

Salem Hospital applied to the City of Salem for site plan review and a variance from a provision of the Salem Revised Code (SRC) for development of a property (the Church Street property) that the hospital owns adjacent to the existing hospital. It proposed to build a medical rehabilitation center and hospitality house, parking to serve those uses, and additional parking to serve the hospital. After a hearings officer approved the site plan review and the variance, Southcentral Association of Neighbors (SCAN) appealed to the Land Use Board of Appeals (LUBA), contending that the hearings officer had misinterpreted the relevant provisions of the SRC. LUBA agreed with SCAN and intervenors Fisher and Christenson (collectively, Fisher intervenors) that the hearings officer "[had] not established that [the proposed number of] parking spaces may be allowed on the property consistent with all applicable code requirements." Accordingly, LUBA remanded the decision to the city.

Intervenor Timothy Cowan petitions for judicial review of LUBA's decision.[1] We reject Cowan's arguments without discussion because they essentially ask us to act as decision makers in the first instance, rather than identifying and addressing purported errors in LUBA's factual findings or legal reasoning. The hospital cross-petitions for judicial review, contending that LUBA erred in reversing the hearings officer's order. Because the hospital has not demonstrated any error in LUBA's decision, we affirm.

We may reverse or remand LUBA's order if it is "unlawful in substance or procedure." ORS 197.850(9)(a); *Pliska v. Umatilla County*, 240 Or App 238, 243, 246 P3d 1146 (2010), *rev den*, 350 Or 408 (2011). "[E]rror in procedure is not cause for reversal or remand unless the court finds that substantial rights of the petitioner were prejudiced thereby." ORS 197.850(9)(a).

The parties agree that the city's approval of the site plan review and variance is a limited land use decision. ORS 197.015(1)(a)(B). Accordingly, here, LUBA's task was

---

[1] In its answering brief on the petition, the hospital moves to strike Cowan's opening brief. We deny that motion.

to determine whether the hearings officer's decision "[did] not comply with applicable provisions of the land use regulations." ORS 197.828(2)(b). In making that determination, LUBA does not defer to the hearings officer's interpretation of the local ordinance. *Gage v. City of Portland*, 319 Or 308, 317, 877 P2d 1187 (1994).

As framed in the cross-petition, the parties' dispute turns on whether LUBA correctly concluded that various SRC provisions support the conclusion that the Church Street property is a "lot" that is separate from the site of the hospital. SRC 133.050(a). We begin by setting out the most relevant provisions of the SRC, which provide background for the procedural history and the parties' arguments.[2]

Read together, SRC 133.050 and SRC 133.100 specify the minimum and maximum numbers of off-street parking spaces to be associated with a particular use and where that parking generally must be located. SRC 133.050 provides:

"(a)   Off-street parking and loading areas shall be provided *on the same lot* with the main building or use except that:

"* * * * *

"(2)   In any [district other than a residential district], except the CB and SWMU districts [(which are not at issue here)], the parking area may be located off the site of the main building or use if it is within 500 feet of such site.

"* * * * *

"(b)   Off-street parking is incidental to the use which it serves. As such, it shall be located in a zoning district appropriate to that use, or where a public parking area is a specific permitted use."

(Emphasis added.)

---

[2] On May 14, 2014, a new version of the SRC went into effect; Title X of the SRC, the zoning code, is now referred to as the Unified Development Code (UDC). Among other things, the new version renumbered and significantly modified the parking chapter of the SRC.

The hospital's application was deemed complete on May 14, 2014. The parties agree that the former provisions of the SRC, rather than the provisions of the UDC, are the relevant code provisions for this site plan review. Accordingly, all of the provisions discussed in this opinion are the former SRC provisions.

SRC 133.100 provides, in part:

"(a)   Except as otherwise specifically provided in this zoning code, off-street parking spaces shall be provided in amounts not less than those set forth in Table 133-1.

"(b)   Off-street parking spaces shall not exceed 2.5 times the amount required under Table 133-1 if such amount is 20 or less; and not 1.75 times the amount required if such amount is more than 20."

Table 133-1 lists uses and the minimum number of parking spaces that must be provided for a given unit of each type of use. As relevant here, "Health Services" must provide one parking space per 350 square feet of gross floor area, and "Hospitals" must provide one and one-half parking spaces per bed. Under SRC 133.100(b), set out above, the maximum number of parking spaces allowed is calculated by multiplying the minimum number by—as relevant here—1.75.

The dispute in this case centers on the term "lot" as used in SRC 133.050(a). In that regard, the hospital relies on SRC 130.270, which provides:

"Every building shall be entirely situated on a separate lot, except as allowed under the Unit Ownership Law (ORS 91.400, et seq.). Where two or more separate lots are combined under single ownership to accommodate a single development, the entire combined area shall be considered as a single lot for purposes of this zoning code. Buildings which are attached at a common property line, but which otherwise meet all requirements of SRC Chapter 56 as separate buildings shall be considered as separate buildings for purposes of this section."

With those provisions as background, we turn to the facts, which are undisputed. As LUBA explained,

"The [Church Street] property is an 8.42-acre parcel that is the former site of the Oregon School for the Blind. The property is bounded on three sides by city streets, and on the north by Pringle Creek. Portions of the property are within the creek's 100-year floodplain and a small portion [is] within the creek's floodway.

"The parcel is zoned Public and Private Educational Services (PE), which allows medical centers, hospitals, and outpatient medical services as permitted uses."

(Footnote omitted.) The Church Street property is adjacent to the Salem Hospital. The hospital campus includes several buildings; the record does not reflect whether those buildings are on more than one lot. The parties agree that the hospital owns the buildings and property that make up the hospital campus.

The hospital sought to build a medical rehabilitation center and hospitality house, 189 parking spaces to serve those uses, and 75 additional parking spaces to serve the hospital on the Church Street property. In May 2014, it applied to the city for site plan review and a code standard variance to allow removal of nine significant trees. Only the Church Street property, not any other hospital property, was the subject of the application.

After receiving notice of the application, SCAN provided comments. The city planning administrator approved the site plan and the variance. SCAN appealed the decision to a hearings officer, raising issues regarding compliance with parking maximums, transportation improvements, and the variance. The hearings officer conducted a *de novo* hearing on August 13, 2014, and subsequently issued the city's final decision approving the site plan review and variance.

The record before the hearings officer included a letter from the hospital's architecture firm regarding parking to serve the hospital. In the letter, the hospital asserted that "[t]he current parking count on campus is not adequate to meet the needs of the Hospital and its patients." Accordingly, in addition to parking to serve the proposed rehabilitation center and hospitality house, the hospital proposed to build additional parking on the Church Street property to support the other hospital uses. In a table attached to the letter, the hospital identified "the primary use of each structure" on the hospital campus and calculated the minimum and maximum numbers of parking spaces that it contended were allowed for each building under Table 133-1.

In opposing the hospital's request for more parking to support the hospital, SCAN contended that the relevant SRC provisions limited the uses that could be taken into account in calculating the maximum number of parking spaces to the uses proposed for the Church Street property.

The hearings officer disagreed and accepted the position taken by the city planning administrator and the hospital, reasoning as follows:

"[T]he Hearings Officer finds that the better way to analyze the application is to view the property in its entirety. The hospital campus is under single ownership and SRC 133.070 states that the land provided for off-street parking and loading areas shall be owned in fee title by the owner of the property served by the parking. SRC 133.050(a)(2) provides that parking areas may be located off the [site] of the main building or [use] if it is within 500 feet of the site. SRC [130].270 provides that where two or more separate lots are combined under single ownership to accommodate a single development, the entire combined area shall be considered as a single lot. The Hearings Officer is convinced that the Salem Hospital—who owns the entire subject property and the adjacent parcels—should be given credit for the entire area of the Salem Hospital campus which would mean their minimum off-street parking requirements for the campus is 2,340 and the maximum is 4,095. Therefore, the proposed number of parking spaces of 2,836, which includes the new 264 parking spaces, falls well within that range, and finds for the applicant on this basis of the appeal. In addition, this allows for flexibility in parking for the various buildings on the campus."

SCAN appealed to LUBA, arguing that the hospital's application was not related to property other than the Church Street property; accordingly, in its view, the maximum number of parking spaces allowed as part of the application should be the number allowed for only the uses on the Church Street property, and not for the hospital itself.[3] The hospital responded that "[t]he City's parking standards expressly allow considering the amount of parking and its location based on numerous uses located on multiple adjacent or nearby lots."

LUBA disagreed. Because, as we will explain, to the extent we reach the merits of the hospital's contentions on review, LUBA's reasoning is dispositive, we quote it at length:

---

[3] The arguments that SCAN and the Fisher intervenors presented to LUBA were very similar. Accordingly LUBA, discussed their arguments together. The Fisher intervenors are not parties to this appeal.

"SRC chapter 133 sets out the standards for off-street parking, loading and driveways. SRC 133.050(b) provides that '[o]ff-street parking is incidental to the use which it serves.' SRC 133.050(a) provides that '[o]ff-street parking and loading areas shall be provided on the same lot with the main building or use,' with one relevant exception. The exception, at SRC 133.050(a)(2), provides that 'the parking area may be located off the site of the main building or use if it is within 500 feet of such site.' As noted above, SRC 133.100 provides for minimum and maximum numbers of parking spaces, based on Table 133-1. Table 133-1 lists a number of use categories, for example, 'Health Services,' which must provide one parking space per 350 square feet of gross floor area, and 'Hospitals,' which must provide one and one-half parking spaces per bed.

"Taken together, the foregoing SRC provisions clearly link required parking to the particular building or use it serves and is incidental to, and require that such parking be provided on the same lot as that building or use, and on a different lot only if that different lot is within 500 feet of the site of the building or use that the parking serves. Nothing in the SRC chapter 133 parking provisions suggests that multiple developed lots in common ownership can be aggregated into a single 'lot' or 'site' for purposes of locating parking or calculating the minimum or maximum number of parking [spaces] required under the applicable SRC chapter 133 provisions.

"The hearings officer's conclusion that the entire Salem Hospital campus constitutes a single commonly owned 'lot' for purposes of the SRC parking provisions, and therefore parking for any of the buildings or uses on the campus can be provided anywhere else on the campus, rests on context provided by two code provisions. The first is SRC 133.070, which requires that land for off-street parking must be either (1) owned in fee title by the owner of the property served by the parking, or (2) subject to a permanent easement. However, SRC 133.070 speaks only to ownership, and does not suggest that parking incidental to a building or use can be located on a different lot or site than the main building or use served, if that location would violate otherwise applicable requirements (such as the SRC 133.050(a)(2) 'within 500 feet' requirement).

"The second contextual provision the hearings officer relied upon is SRC 130.270, part of a code section entitled 'Lot Standards.' SRC 130.270 provides:

"'**Buildings to be on a Lot.** Every building shall be entirely situated on a separate lot, except as allowed under the Unit Ownership Law (ORS 91.400, et seq.). *Where two or more separate lots are combined under single ownership to accommodate a single development, the entire combined area shall be considered as a single lot for purposes of this zoning code.* Buildings which are attached at a common property line, but which otherwise meet all requirements of SRC Chapter 56 as separate buildings shall be considered as separate buildings for purposes of this section.' (Emphasis added).

"The hearings officer apparently understands the second sentence in SRC 130.270, emphasized above, to provide that where two or more contiguous lots are owned in common, any separate buildings or development on those separate lots are treated as a 'single development,' and the commonly owned, contiguous lots are treated as a single 'lot' for all zoning code purposes, including the off-street parking requirements of SRC chapter 133. However, the full text and context of SRC 130.270 do not support such an expansive interpretation of the second sentence.

"The three sentences of SRC 130.270 are concerned with the location of buildings on lots, which has consequences for setbacks and similar standards in SRC chapter 130. The first sentence states the general rule that each building shall be placed on a single lot, with an exception for condominiums. The second sentence, emphasized above, states another exception: 'a single development' may be placed on more than one lot in common ownership, and if so the combined area is then treated as a single lot for purposes of other zoning standards. The circumstance the second sentence is addressing is a proposed 'single development' that is constructed across a lot boundary onto two or more contiguous lots. That circumstance is refined in the third sentence, which provides that development consisting of separate buildings attached at a common property line may still be considered separate buildings. Viewed together, it is reasonably clear that the second sentence does not purport to state that separate buildings on separate lots constitute a 'single development' simply because those lots and buildings happen to be under common ownership, or that the combined area of such separate lots constitutes a single 'lot.'

"Although the various buildings and lots owned by the Salem Hospital are no doubt functionally interrelated, we are not cited to any basis in the city's code to view the Salem Hospital campus as 'a single development' for purposes of SRC 130.270 or any other code provision. Moreover, the practical effect of the hearings officer's interpretation of SRC 130.270 is to carve a significant exception into the SRC 133.050 requirement that off-street parking areas be provided on the same lot with the 'main building or use' that the parking serves, or, if located on a separate lot, be provided within 500 feet of that main building or use. One apparent purpose of those provisions is to ensure that parking incidental to a building or use is located in reasonable proximity to the building or use served. Under the hearings officer's interpretation, off-street parking that is incidental to a building may be located at the opposite end of the Salem Hospital campus from that building, even if that parking is located a considerable distance from the building it nominally serves.

"In sum, the hearings officer has not established that more than 189 parking spaces may be allowed on the property consistent with all applicable code requirements. That is not to say that additional parking spaces to serve other buildings on the Salem Hospital campus cannot be approved on the subject property, only that such additional parking spaces must comply with the applicable requirements of SRC 133.100 and 133.050, including the requirement that parking located off the lot of the main building or use served must be located within 500 feet of the site of that building or use."

On judicial review, the hospital assigns error to LUBA's conclusion that, for purposes of SRC 133.050(a), the Church Street property is not part of the same "lot" as the property on which the hospital sits. It first relies on SRC 111.130(g), contending that LUBA erred in failing to recognize and apply an "express definition of the term 'lot' that includes parcels under common ownership." Next, the hospital disagrees with LUBA that SRC 133.100 and SRC 133.050(b) provide contextual support for LUBA's conclusion, and it contends that LUBA erred in failing to find support for the hospital's position in SRC 133.070. Finally, the hospital contends that LUBA erred in rejecting the hearings officer's reliance on SRC 130.270.

In its second assignment of error, the hospital argues that we should reverse LUBA's order even if we agree with LUBA's interpretation of the relevant SRC provisions, on the ground that site plans in the record demonstrate that the disputed parking is less than 500 feet from Building B, which the hospital now contends is the building that will be served by the additional parking spaces on the Church Street property.

As we will explain, the hospital's argument that we must apply the definition of "lot" in SRC 111.130(g) may not be preserved and, in any event, is not adequately developed for our review. To the extent that the hospital's other arguments in support of its first assignment of error are adequately developed to allow our review, the hospital has not demonstrated that LUBA erred in concluding that the proposed uses of the Church Street property and the hospital do not constitute "a single development" under SRC 130.270 and are not situated on a single "lot" for purposes of SRC 133.050(a). We reject the second assignment of error without further discussion because the issue—whether, as a factual matter, the parking proposed on the Church Street property is within 500 feet of a hospital building on a separate lot—was not raised either before the hearings officer or before LUBA.

We begin with the hospital's argument that SRC 111.130(g), which provides a definition of the term "lot," compels the conclusion that the Church Street property and the hospital site are one "lot" for purposes of SRC 133.050(a). Neither the hospital nor any other party relied on SRC 111.130(g) before the hearings officer. Before LUBA, however, the hospital did cite that provision:

"[T]he Hearings Officer's reliance on SRC 130.270 as authority for treating separate lots under common ownership as a single unit for purposes of development [suggests that] the parking and main building are, in effect, on the same 'lot.' That interpretation finds support in the definition of the term 'lot' in SRC 111.130(g) including 'any parcel or contiguous unit of lots or other parcels under common . . . ownership.' This provides further support for the Hearings Officer's evaluation of parking demand based on the entire

Hospital campus as a single unit for setting the parking maximums."

(Omission in hospital's brief to LUBA; citation omitted.) Thus, the hospital argued to LUBA that the definition in SRC 111.130(g) provides support for the hearings officer's view of SRC 130.270—namely, that, under SRC 130.270, "separate lots under common ownership" are treated "as a single unit for purposes of development," and that, given that interpretation of SRC 130.270, "the parking and main building are, in effect, on the same 'lot.'" It did not argue, however, that SRC 111.130(g) independently compels that conclusion.

The hospital's contention to LUBA differs from the position the hospital takes on judicial review. Now, as noted, the hospital contends that the definition in SRC 111.130(g) independently and conclusively governs the meaning of "lot" in SRC 133.050(a). It asserts that SRC 111.130(g) applies directly; it is not merely context that supports the hearings officer's conclusion regarding SRC 130.270.

In this context, that shift in focus of the hospital's argument is significant. The difference between the hospital's position before LUBA and its position on review is illustrated by consideration of the material that the hospital has attached to its briefs. The hospital attached a copy of the page of the SRC that contains SRC 111.130 to both its LUBA brief and its brief on judicial review. SRC 111.130 contains definitions of terms that begin with "L"—including "lot"—but neither that provision nor anything else on that page of the SRC states to which SRC provisions those definitions apply. The definitions may apply throughout the code, to specified chapters of the code, or only to provisions where context does not demonstrate that the term has a different meaning.

That single "L" definitions page may have provided LUBA with information sufficient to address the argument that the hospital made in that forum, namely, that SRC 111.130(g) supports the hearings officer's interpretation of SRC 130.270 and, accordingly, provides contextual support for the conclusion that the Church Street property is on the same "lot" with all the other hospital buildings.

But it does not provide us with the information necessary to evaluate the argument that the hospital now appears to make on judicial review. To cogently argue that the SRC 111.130(g) definition controls the meaning of the term "lot" in SRC 133.050(a), the hospital must contend that the definition specifically applies to SRC 133.050 and that the code allows for no other, more contextually driven, interpretation of "lot" in that context.[4] The hospital has not stated, or provided any support for, that necessary premise of its argument: The information is not in the hospital's brief, an appendix, or the record.[5] Accordingly, because the argument may not be preserved and, in any event, the hospital has not developed it sufficiently for our review, we do not address the hospital's argument that the definition of "lot" in SCR 111.130(g) specifically controls the meaning of that word as used in SRC 133.050(a). *See Barnes v. City of Hillsboro*, 239 Or App 73, 81-82, 243 P3d 139 (2010) (a party must raise an issue to LUBA to preserve it for judicial review; the party's statement should alert the tribunal and opposing counsel to the substance of the position); *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("it is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself").

We turn to the hospital's other arguments in support of its first assignment of error. The question for us is whether LUBA erred in determining that the term "lot" in

[4] We observe that, as used in SRC 133.050(a), "lot" is synonymous with "site." SRC 133.050(a) provides that parking "shall be provided *on the same lot with* the main building or use"; an exception to that rule is that "the parking area may be located *off the site of* the main building or use if it is within 500 feet of *such site*," SRC 133.050(a)(2) (emphases added). In our view, that context suggests a meaning for "lot" that differs from the definition in SRC 111.130(g).

[5] We note that, when parties seek to have us interpret a local code provision—particularly a provision of a code that is no longer in effect or not readily available—in addition to developing their arguments, it is advisable to provide us with all parts of the code that provide arguably relevant context for the provision or provisions at issue. *See* ORAP 4.67 ("The petitioner shall include copies of all provisions of local government documents (*e.g.*, ordinances, plans) *** pertinent to its arguments on judicial review in the excerpt of record if the provisions are part of the record or in an appendix to the petitioner's opening brief if the provisions are not part of the record." (Footnote omitted.)).

SRC 133.050(a) refers only to the Church Street property, and not also to the hospital site. The hospital's primary remaining argument is based on SRC 130.270; it renews the argument it made to LUBA that the Church Street property and the hospital are on "separate lots * * * combined under single ownership to accommodate a single development," SRC 130.270, and, accordingly, that those properties should be treated as one lot for "purposes of this zoning code," *id.*, including the parking provisions.[6]

The parties agree that the hospital owns the Church Street property and the hospital site. The remaining question, then, is whether all of those properties have been "combined" under the hospital's ownership "to accommodate a single development." SRC 130.270. The problem with the arguments that the hospital advances on that point, however, is that they do not actually confront the text of SRC 130.270 or LUBA's reasoning.

As quoted above, LUBA analyzed the text of the provision and concluded that "[t]he circumstance the second sentence is addressing is a proposed 'single development' that is constructed across a lot boundary onto two or more contiguous lots"; that is, contrary to the hospital's argument, "the second sentence does not purport to state that separate buildings on separate lots constitute a 'single development' simply because those lots and buildings happen to be under common ownership." Thus, as we understand it, in LUBA's view, if an applicant proposed to develop a building or group of buildings as part of one project, and proposed to construct that building or those buildings and their related parking and landscaping across a lot boundary onto two or more contiguous lots, that would constitute a single development.[7] It is less clear from LUBA's reasoning whether, under SRC 130.270, a building added to an already-existing development could ever be part of "a single development" with functionally related already-existing buildings. What is clear, however, is that LUBA rejected the view that common ownership, alone, suffices to make adjacent buildings—even

---

[6] We reject the hospital's remaining code-based arguments without discussion.

[7] It is possible the applicant would also have to engage in some type of formal process to "combine" the lots. Given the hospital's arguments, discussed below, we need not address that possibility.

functionally related adjacent buildings—and their lots into "a single development."

The hospital contends that LUBA's reasoning was wrong, but it does not explain why LUBA erred in rejecting the idea that "a single development" necessarily exists whenever a single entity owns adjacent functionally related buildings. The closest that the hospital comes to explaining why, in its view, the Church Street property was part of "a single development" with the hospital is to state that, "[o]nce the development was spread over multiple lots, it became 'a single development' eligible for approval under SRC 130.270. The language of the SRC specifically contemplated and authorized that approach." That reasoning is circular. It assumes that the proposed buildings and parking on the Church Street property are part of the same "development" as the hospital and uses that assumption to conclude that they constitute a single development. But it identifies no reason, other than common ownership by the hospital, to conclude that the planned uses for the Church Street property will be related to the existing hospital in a way that necessarily will result in the two facilities being part of "a single development" for purposes of the SRC.[8]

In sum, the hospital has advanced no reason for us to conclude that LUBA's understanding of SRC 130.270 is incorrect, and we decline to make arguments for the hospital that it has not endeavored to make for itself. *Beall Transport Equipment Co.*, 186 Or App at 700-01 n 2. Accordingly, we affirm.

Affirmed on petition and cross-petition.

---

[8] We observe, for example, that we have not been provided with the complete SRC definition of "development," which would better inform our understanding of SRC 130.270. The hospital quotes a part of the definition in its brief, but that single clause, quoted out of context, is not sufficient to support any meaningful understanding of the term "development" as used in SRC 130.270.