290 December 31, 2025 No. 1151

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LANDWATCH LANE COUNTY,
*Petitioner,*

*v.*

LANE COUNTY
and RR Hawley Creek Quarry, LLC,
*Respondents.*

Land Use Board of Appeals
2025008;
A188415

Submitted October 30, 2025.

Sean Malone filed the brief for petitioner.

Alan M. Sorem and Saalfeld Griggs PC filed the brief for respondent RR Hawley Creek Quarry, LLC.

No appearance for respondent Lane County.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Petitioner seeks judicial review of an order of the Land Use Board of Appeals (LUBA). In that order, LUBA affirmed the decision of a Lane County hearings officer that verified the subject properties as legal lots. On judicial review, petitioner asserts that legal lot verification (LLV) should not have been granted because the property lines were unlawfully adjusted in 1999, meaning the properties were not lawfully established. Petitioner has not developed an argument for why LUBA's interpretation and application of the Lane Code exception to the LLV process was unlawful in substance, and we therefore affirm.

This matter involves applications for LLV of two properties, which were consolidated for appeal before the county. The subject properties were lawfully created by partition in 1983, along with a third property that is not at issue. In 1999, the property lines between all three properties were adjusted by recording a single property line adjustment deed. At the time, Lane County had no established process for property line adjustments. A survey depicting the line adjustments was filed with and accepted by the county surveyor. In 2016, the property lines were adjusted again, in accordance with county procedures that had since been adopted.

In 2024, the landowners applied for LLV. In Lane County, an LLV is a determination or decision made under the Lane Code (LC) that a unit of land is a lawfully established unit of land. LC 13.030(3)(p). LC 13.030(3)(n) defines a lawfully established unit of land as:

"(i)   A lot or parcel created by filing a final plat for subdivision or partition; or

"(ii)   Another unit of land created:

"(aa)   In compliance with all applicable planning, zoning and subdivision or partition ordinances and regulations; or

"(bb)   By deed or land sales contract, if there were no applicable planning, zoning or subdivision or partition ordinances or regulations."

A legal lot verification application is either reviewed through formal procedures laid out in the code, or may be approved without formal review if particular criteria are met:

"(1)   Process:

"(a)   A legal lot verification must be reviewed pursuant to Type II procedures[1] according to LC Chapter 14, except:

"(i)   A legal lot verification does not need to be formally reviewed if the lawfully established unit of land is consistent with (aa), (bb), or (cc) in this subsection, and is in the same configuration or has been reconfigured by a lawfully approved property line adjustment application.

"(aa)   Lots or parcels created by filing a final plat for subdivision or partition for which land division approval was granted by the County are considered lawfully created.

"(bb)   Parcels created by the filing or recording of an approved minor or major partition map between 1949-1990 with the County are considered lawfully created.

"(cc)   A lawfully established unit of land already verified as a legal lot and noticed by the County, where that legal lot verification is a final land use decision."

LC 13.140(1).

The LLV applications for the subject properties were initially denied by the county planning director, pursuant to Type II review procedures. In reviewing each action involving the properties over the preceding decades, the planning director determined that the 1999 property line adjustment was unlawful because it reconfigured three properties and state law defined a property line adjustment as relocating a common property line between just two properties. The planning director therefore concluded that, even though the properties were initially lawfully created in 1983, they were unlawfully adjusted and therefore were not lawfully established, meaning they did not qualify for LLV.

---

[1] Type II procedures are detailed in LC 14.030 and provide for notice and comment periods in certain situations, a written decision from the Planning Director, and appeal rights to a Hearings Official and LUBA. LC 14.030(1)(b). The code also sets forth application requirements specific to LLV applications, the details of which are not relevant to the matter before us. LC 13.140(2)(b); LC 14.040.

The landowners appealed the decision to a county hearings official, and the cases were consolidated for a single decision. The hearings official reversed the planning director's denial and granted the requests for LLV. The hearings official concluded that the properties met the requirements for the exception from the formal LLV process, under LC 13.140(1)(a)(i)(bb), because they were first created through a county-approved minor partition between 1949-1990 and later adjustments were all lawfully approved. In concluding that the adjustments were lawfully approved, the hearings official noted that the 1999 property line adjustment "was completed at a time when the County had not yet adopted local regulations and procedures for reviewing and approving property line adjustments. However, the County's survey office did review and accept the survey depicting the 1999 adjustments." Despite concluding that the exception applied and the properties were therefore excepted from the formal Type II LLV process, the hearings official went on to review the planning director's decisions on the merits and addressed various issues raised by the parties in relation to the lawfulness of the 1999 adjustment, and approved the LLV on that basis as well. The planning director sought reconsideration and the hearings official adhered to her original decision without further explanation.

Petitioner appealed to LUBA. Before LUBA, petitioner argued that the 1999 property line adjustment between three properties was unlawful under state law and therefore could not be considered to have been "lawfully approved" for purposes of LC 13.140(1)(a)(i).[2] LUBA rejected petitioner's argument and agreed with the hearings official's interpretation of LC 13.140(1)(a)(i):

"Petitioner argues in detail why it believes that the 1999 property line adjustment violated existing state law, but petitioner does not explain why the hearings official's interpretation, that by following the only then-existing county

_____

[2] Petitioner also argued that the hearings official misconstrued the applicable law and made inadequate findings when she implicitly found that the 1999 property line adjustment acceptance by the county surveyor was a land use decision that could not be collaterally attacked. LUBA rejected that argument, concluding that the hearings officer had not found the 1999 adjustment to be a land use decision. Petitioner has not challenged LUBA's conclusion on that issue and has indicated its agreement with LUBA's determination.

procedures that the property line adjustment was 'lawfully approved,' is a misconstruction of law other than to argue the 1999 property line adjustment was not a land use decision and therefore not immune from collateral attack. As explained, however, the hearings official did not find that that the 1999 property line adjustment was a land use decision or otherwise immune from collateral attack—instead she found that by following the then-existing county procedures the 1999 property line adjustment was 'lawfully approved.'

"We agree with the hearings official's interpretation of LC 13.140(1)(a)(i). The subject properties were lawfully created by county-approved partition in 1983. The 1999 property line adjustment was lawfully approved pursuant to the only county process and procedure in effect at the time—review and acceptance by the county surveyor. The 2016 property line adjustment was lawfully approved pursuant to the existing county property line adjustment process. Therefore, the subject properties both meet the exemption from the legal lot verification process and also satisfy the approval criterion for legal lot verification."

LUBA then stated:

"The hearings official adopted alternative findings explaining why she believed that even if the underlying correctness of the 1999 property line adjustment could be revisited, it complied with existing state law. As we agree with the hearings official's interpretation of 'lawfully approved' to mean the 1999 property line adjustment received all then-required county approvals, we need not consider petitioner's legal, findings, and substantial evidence challenges to the hearings official's alternative basis for concluding that the adjustment was lawfully approved."

Petitioner filed this request for judicial review. We review a LUBA order for whether it is unlawful in substance. ORS 197.850(9)(a). A LUBA order is unlawful in substance "if it represents a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136, *rev den*, 369 Or 69 (2021) (internal quotation marks omitted).

Before us, petitioner argues that, because the 1999 adjustment did not comply with state law, the properties are not lawfully established units of land, and therefore should

not have been granted legal lot verification. Petitioner's argument goes to the merits of whether the lots should have been verified as legal lots, pursuant to the Type II verification process. However, petitioner's arguments do not engage with the crux of LUBA's decision, that the properties were exempt from the legal lot verification process pursuant to LC 13.140(1)(a)(i). That decision was based on LUBA's understanding of the phrase "lawfully approved" as meaning that it was carried out pursuant to the only county process and procedure in effect at the time. Petitioner has not offered any argument as to why LUBA's interpretation of LC 13.140(1)(a)(i) was incorrect. Indeed, petitioner argues that the conclusion on the applicability of the exemption was moot, and that any discussion of the exception was irrelevant and superfluous based on the hearings officer's resolution of the LLV on the merits. Petitioner asserts:

> "[O]nce the Hearings Official concluded that the subject properties were legal lots, whether the exception to formal review applied becomes irrelevant. As such, the exceptions to formal review and the criteria in LC 13.140(1) are superfluous, and the only remaining issue is whether the subject properties are, indeed, legal lots (*i.e.*, whether the subject properties were lawfully established). LUBA's repeated citation to LC 13.140(1)(a)(i) is, therefore, misplaced, though there is some similarity between Lane Code's use of the term 'lawfully approved' for an exception to the formal LLV process and Lane Code's and statute's use of the term 'lawfully established' for determining whether a property is a legal lot (*i.e.*, the determination of whether the 1999 [property line adjustment (PLA)] resulted in legal lots or not legal lots hinges on whether the 1999 PLA was effectuated in accordance with applicable law)."

We disagree that the interpretation of the meaning of the exception and its application were irrelevant or superfluous. When an adjudicative body offers multiple independent bases for a decision, a party challenging the outcome must challenge all independent bases in order to obtain relief. *See Canfield v. Yamhill County*, 142 Or App 12, 18, 920 P2d 558 (1996) (rejecting an assignment of error that was meritorious because LUBA's opinion offered "sufficient independent or alternative bases for each of its determinations" that were challenged by that assignment of error).

Furthermore, on judicial review we review LUBA's order and only reverse if the order is unlawful in substance or procedure, is unconstitutional, or is not supported by substantial evidence. ORS 197.850(9). Therefore, the fact that LUBA's decision entirely turned on the application of the exception to formal review is in no way irrelevant or superfluous.

Petitioner has developed an argument only as to why the LLVs should have been denied on the merits based on its assertion that the 1999 adjustment was inconsistent with state law. Petitioner has not developed an argument as to why LUBA's interpretation of the text and applicability of the LC 13.140(1)(a)(i) exception to the LLV process was unlawful in substance. Petitioner briefly identifies what it perceives to be inconsistencies in LUBA's opinion regarding the conclusion that the 1999 adjustment was "lawfully approved," but that it was not a "land use decision." However, petitioner does not adequately challenge LUBA's interpretation of the phrase "lawfully approved" or its conclusion that the exception to the LLV process applied to the properties. The remainder of petitioner's brief does not address LC 13.140(1)(a)(i) at all. Petitioner focuses on its assertion that the LLVs should not have been granted on the merits under the Type II review procedure because the 1999 adjustment was not effectuated in accordance with state law, meaning the properties were not lawfully established.

To the extent that petitioner asserts that LUBA was incorrect in concluding that the 1999 adjustment complied with all then-existing county procedures because the county had no such procedures in 1999, and therefore the adjustment could not be considered to have been "lawfully approved," that argument is unpreserved. *Barnes v. City of Hillsboro*, 239 Or App 73, 81, 243 P3d 139 (2010) ("Generally, a party must raise an issue to LUBA to preserve it for judicial review." (internal quotation marks omitted)). Before LUBA, petitioner asserted that acceptance of the 1999 property line adjustment by the county surveyor did not involve the application of any criteria or substantive review, but that argument was made in the context of petitioner's assertion that the hearings officer erred in treating the adjustment as a land use decision. That is a fundamentally

different argument than a challenge to what constitutes lawful approval. Because it was not preserved below, we do not reach it.

Petitioner has not developed an argument for why the essential conclusion of the LUBA opinion was unlawful in substance, and we will not develop such an argument for it. We therefore affirm.

Affirmed.